No. 24983.

THE PEOPLE OF THE STATE OF COLORADO *v.*
MARSHALL MARTIN.

No. 24984.

THE PEOPLE OF THE STATE OF COLORADO *v.* ELDON HOWARD
COTT AND ELIZABETH ANN COTT, A/K/A BETTY COTT.

No. 25012.

THE PEOPLE OF THE STATE OF COLORADO *v.*
ELDON HOWARD COTT.

No. 25034.

THE PEOPLE OF THE STATE OF COLORADO *v.*
MARSHALL MARTIN.
(490 P.2d 924)

Decided November 8, 1971.

324

Robert R. Gallagher, Jr., District Attorney, Arapahoe County, James Macrum, Deputy, John A. Topolnicki, Jr., Deputy, Jarvis W. Seccombe, District Attorney, City and County of Denver, Coleman M. Connolly, Deputy, Paul D. Cooper, Deputy, William O. Perry, Deputy, for plaintiff-appellee, cross appellee.

MONTGOMERY, LITTLE & FREELAND, DAVID A. OGILIVE, for defendant-appellee, cross appellant Marshall Martin.

PETER NEY, for defendants-appellees, cross appellants Elizabeth Ann Cott and Eldon Howard Cott.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

These four interlocutory appeals pertain to various challenges to an electronic surveillance involving an interception of telephone communications (wiretap) conducted in Arapahoe County from April 2-7, 1970. Upon motion of the parties, the four separate appeals (involving trial courts in both Arapahoe County and the City and County of Denver) were consolidated in this court. A brief recitation of the pertinent facts is appropriate.

On March 10, 1970, officers of the Denver and Littleton police departments commenced a surveillance of a Littleton residence. On April 1, 1970, they had reason to believe that illegal drug traffic was centered there. Since they were unable to gather sufficient information to establish probable cause to arrest the occupants or to search the premises, application was made to an Arapahoe County District Judge for permission to intercept telephone communications (pursuant to the provisions of 1969 Perm. Supp., C.R.S., 40-4-30.) An order permitting the telephonic interception issued for a period not to exceed 30 days for the phone listed under the name of the resident, Eldon Cott, at the address which had been under surveillance.

A report was filed with the court on April 27, 1970 indicating that the subject phone was tapped from April 2-7 with a total of five hours of conversations recorded. On April 8, a search warrant was issued (supported in part by information gathered during the interception)

for the above address, and also for a "Bronco" truck.

Based upon the evidence gathered through the interception of telephone conversations and during the search conducted pursuant to the above warrant, the defendants in this consolidated proceeding have been charged as follows:

*Eldon Cott* in Arapahoe County: Possession of Narcotic Drugs (C.R.S. 1963, 48-5-2); Conspiracy to Possess Narcotic Drugs (C.R.S. 1963, 48-5-20).

*Eldon Cott* in Denver: Possession of Narcotic Drugs; Conspiracy to Possess Narcotic Drugs; Possession of Narcotic Drugs for Sale (C.R.S. 1963, 48-5-20); and Conspiracy to Possess Narcotic Drugs for Sale (C.R.S. 1963, 40-7-35).

*Elizabeth Ann Cott* in Arapahoe County: Possession of Narcotic Drugs and Conspiracy to Possess Narcotic Drugs.

*Marshall Martin* in Arapahoe County: Conspiracy to Possess Narcotic Drugs.

*Marshall Martin* in Denver: Possession of Narcotic Drugs; Conspiracy to Possess, Possession for Sale, and Conspiracy to Possess for Sale.

Defendants Martin and the Cotts subsequently filed, in both Denver and Arapahoe County district courts, motions to suppress all evidence obtained either directly or indirectly from the telephone interceptions. These motions were granted by the court in Arapahoe County and denied by the court in Denver County. The grounds relied upon by the court in Arapahoe County have been disposed of by subsequent holdings of this court (*See Arguments I and II, infra*). In addition to these grounds, we also dispose of additional constitutional issues raised by the defendants. We reverse the suppression rulings of the Arapahoe County district court and affirm the ruling rendered in the Denver district court denying the suppression.

## I.

## DID THE ARAPAHOE COUNTY DISTRICT COURT

ERR IN HOLDING THAT THE AFFIDAVIT IN SUP-
PORT OF THE SEARCH WARRANT WAS DEFECTIVE
IN THAT IT FAILED TO SET FORTH THE SPECIFIC
GROUNDS FOR ISSUANCE LISTED IN CRIM. P.
41(b)?

 We hold that it did. The precise issue was be-
fore this Court in *People v. Whisenhunt*, 173 Colo. 109,
476 P.2d 997 (1970), in which we held as follows:

"To establish the grounds in an affidavit it is not nec-
essary that the person seeking the search warrant spe-
cifically allege therein the conclusion that the possession
of the drugs is illegal. The rule [Crim. R. 41] provides
that if the judge is satisfied from the facts alleged in
the affidavit that the existence of one or more of the
grounds has been established or that there is probable
cause to believe that one or more of the grounds for
issuing the warrant exist, then it should issue."

██ The affidavit in question identified the drugs as
"suspected marijuana (Cannabis Sativa L.)" and alleged
that they were at the home of the Cotts, but did not
state that the possession or use of the drugs was illegal.
This is the ground which we rejected in *Whisenhunt,
supra,* and we adhere to the holding in that case.

## II.

WAS THE SEARCH WARRANT DEFECTIVE BE-
CAUSE IT DID NOT CONTAIN OR HAVE ATTACHED
THERETO THE CONTENTS OF THE AFFIDAVIT AS
REQUIRED BY 1965 PERM. SUPP., C.R.S., 1963, 48-5-11
(3)?

The defendants have abandoned this argument in light
of this court's subsequent ruling in *People v. Leahy*,
173 Colo. 339, 484 P.2d 778 (1970), that the relevant por-
tion of the statute is unconstitutional:

"Therefore, the statute deprives a court of the discretion
which a court must exercise in finding probable cause
as required by our Constitution and the United States
Constitution. This particular portion of the statute is an
integral part of the entire C.R.S. 1963, 48-5-11(3) and

is non-severable. Therefore, the entire sub-section (3) of the statute is declared to be unconstitutional."

Arguments I and II in effect dispose of the grounds for suppression argued in the courts below with one exception: Defendants contend that the intercept order issued to tap the phone at the Cotts' residence was invalid. Consequently, they assert, any evidence obtained either directly or indirectly as a result of the intercepted communications should be suppressed (the information gathered through the wiretap was used, *inter alia,* to establish probable cause to issue the search warrant).

## III.
## IS THE COLORADO WIRETAP STATUTE UNCONSTITUTIONAL?

The Colorado statute, 1969 Perm. Supp., C.R.S. 1963, 40-4-26 *et seq.* (hereinafter called the Colorado wiretap statute) is modeled after the provisions of Title III of the 1968 *Omnibus Crime Control and Safe Streets Act* allowing law enforcement officers to intercept telephone communications after having obtained judicial authorization upon a showing of probable cause. The purpose and objectives of this federal act have recently been summarized as follows:

"Title III imposes an overall ban on the interception and disclosure of wire or oral communications, but it authorizes interception in connection with the investigation of particular serious crimes by either federal law enforcement officers or state officers acting pursuant to state statute. In most instances the officer is required to obtain a court order before the interception begins. Such an order can be issued only after a judge of competent jurisdiction has determined that specific grounds exist which justify the use of the intercepting devices. When the objective is attained the wiretapping must cease, and there is an overall 30 day limitation which may be extended for an additional 30 days should the judge make new findings sufficient to uphold an original authorization. Information obtained as a result of au-

thorized surveillance may be used or disclosed by the officer to the extent appropriate to the proper performance of his duties and while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or any state or political subdivision thereof." *Cox v. United States,* No. 71-1043, filed October 13, 1971. Slip opinion at 14-15 (10th Circuit).

We will discuss first specific constitutional imperfections alleged by one or more of the defendants, and then discuss generally the constitutionality of the model for our state statutory scheme, Title III of the 1968 Federal Act.

(A) The defendants first argue that since the Colorado wiretap statute requires nothing more than a statement of the district attorney or other applicant that one of the offenses set forth in 1969 Perm. Supp. C.R.S. 1963, 40-4-30(1) is to be committed, it therefore violates the requirements of the *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) cases, which require the stating of the specific offense for which the order is sought. The specific language referred to by the defendants, *inter alia,* is found in *Berger, supra:*

*"The Fourth Amendment commands that a warrant issue not only upon probable cause supported by oath or affirmation, but also 'particularly describing the place to be searched, and the persons or things to be seized.'* New York's statute lacks this particularization. It merely says that a warrant may issue on the reasonable ground to believe that evidence of crime may be obtained by the eavesdrop. It lays down no requirement for particularity in the warrant as to what specific crime has been or is being committed, nor 'the place to be searched,' or 'the persons or things to be seized' as specifically required by the Fourth Amendment. The need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially

great in the case of eavesdropping." 388 U.S. at 55-56 (Emphasis added.)

Section 40-4-30(1) of the Colorado wiretap statute reads as follows:

*"Ex parte order for wiretapping and eavesdropping. —* (1) An ex parte order for wiretapping or eavesdropping, or both, as defined in sections 40-4-26 to 40-4-33, as amended, may be issued by any judge of competent jurisdiction of the state of Colorado upon application of the attorney general, a district attorney, or the United States attorney, stating that there is *probable cause to believe that evidence may be obtained of the commission of the crime of murder, kidnapping, extortion, armed or aggravated robbery, rape as defined in section 40-2-25(1)(d) and (1) (e), arson, burglary, mayhem, or an organized criminal conspiracy to commit any of the aforementioned, or violations set forth in section 48-5-20, C.R.S. 1963, or a crime endangering the national security,* or that the same may be committed; or that such evidence is necessary to save human life; or that the communication, conversation, or discussion, as the case may be, is itself an element of a specified crime." (Emphasis added.)

When the above language is read together with the following provisions, we believe that the Fourth Amendment requirements enunciated by the *Berger* and *Katz, supra,* decisions, are met:

"(a) Each application for wiretapping or eavesdropping, or both, shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

(b) The identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

(c) A complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including: *Details as to the particular offense that has been, is being, or is about to* be

committed; a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted; a particular description of the type of communication sought to be intercepted; the identity of the person, if known, committing the offense and whose communications are to be intercepted * * *." 1969 Perm. Supp., C.R.S. 1963, 40-4-30 (2) (Emphasis added.)

Additionally, we note the following language from the *affidavit* in support of the issuance of the wiretap order in the instant case:

"[T]hat I have received information from a previous reliable confidential informant whose information has resulted in the arrests of narcotic and dangerous drug violators, and the confiscation of a quantity of narcotics and dangerous drugs on 3 separate occasions, that one ELDON H. COTT is presently engaged in the trafficking of narcotics, namely Marijuana (Cannabis Sativa L.) at his residence of 946 West Berry Ave., Littleton, Colorado * * *."

We conclude, therefore, that the provisions of the Colorado wiretap statute meet the above constitutional mandates. The affidavit also meets the statutory requirements. *Cross v. State,* 225 Ga. 760, 171 S.E.2d 507 (1969). *Accord, State v. Christy,* 112 N.J. Super 48. 270 A.2d 306 (1970).

(B) The defendants next argue that the Colorado wiretap statute violates Article II, Section 7 of the Colorado constitution, which requires that probable cause be reduced to writing:

"Security of personal property — searches — seizures — warrants. — The people shall be secure in their person, papers, homes and effects, from unreasonable searches and seizures; *and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or things to be seized, as near as may be, nor without probable cause, supported*

*by oath or affirmation reduced to writing."* Id. (Emphasis added.)

It is argued that the following language of the wiretap statute violates the above Section 7:

"The judge may require the applicant to furnish additional testimony or documentary evidence in support of the application." 1969 Perm. Supp., C.R.S. 1963, 40-4-30(3).

We note, however, that section 40-4-30(1), quoted above, requires that an ex parte order for wiretapping or eavesdropping may be issued only upon application "stating that there is probable cause to believe that evidence may be obtained * * *." The following section of the statute then provides as follows:

"(a) *Each application for wiretapping or eavesdropping, or both, shall be made in writing upon oath or affirmation to a judge of competent jurisdiction* and shall state the applicant's authority to make such application * * *." *Id.* 40-4-30(2). (Emphasis added.)

■■ We conclude that regardless of any provision within the wiretap statute allowing the judge to take additional testimony, the Colorado constitutional requirement that probable cause be reduced to writing is met. Furthermore, we have closely examined the affidavit and application for the wiretap order and conclude that the probable cause requirements of the United States and Colorado constitution as defined by the applicable case law were fully met in the instant case, with no detailed analysis of the documents here before us deemed necessary.

(C) The defendants also make several arguments relating to the basic contention that the Colorado statutory scheme regulating wiretapping and other forms of electronic eavesdropping do not meet the constitutional standards set forth in *Berger v. New York* and *Katz v. United States,* both *supra.* One of the major arguments made in this regard is defendant Martin's assertion that inasmuch as his identity was known to the police, he should have

been specifically named in the wiretap authorization. Whether failure to name him was a violation of the statute will be considered in Section V, *infra.* We discuss only the constitutional question at this juncture.

As we have already noted, much of the applicable Colorado wiretap statute is similar in wording to the federal wiretap statute found at 18 U.S.C. §§2510-2520, which latter sections were part of the Omnibus Crime Control and Safe Streets Act of 1968, and were the Congressional answer to the United States Supreme Court's wiretap decisions and suggestion that a statute could be drafted that would meet Fourth Amendment standards. *See Schwartz,* The Legitimation of Electronic Eavesdropping: The Politics of Law and Order, 67 Mich. L. Rev. 455 (1969). Section 40-4-30 (1), *supra,* of the Colorado statute provides an enumeration of the crimes for which a wiretap authorization may be obtained, and corresponds to subsection 2 of §2516 of the Federal Act. The balance of the provisions of the Colorado statute correspond almost verbatim to § 2518 of the Federal Act. Therefore, with the exception of those Constitutional arguments already discussed, if the federal statutory scheme is valid, so, then, must be the virtually identical Colorado statute.

While this matter has been under consideration by this court, the federal statutes have received close scrutiny in the very recent Tenth Circuit case of *Cox v. United States, supra,* announced October 13, 1971. *Cox* dealt with the monitoring, pursuant to a lawful order, of certain telephone conversations, by agents of the Bureau of Narcotics and Dangerous Drugs. During the course of the interceptions, which were originally authorized to investigate violations of the Federal Narcotics Laws, the agents learned of a plan to commit a bank robbery. In answering various arguments made by defendant Cox challenging the use of the intercepted conversations against him, Judge Doyle had occasion to discuss at length the constitutionality of those provisions allowing law enforcement officers to intercept telephone

communications after having obtained judicial authorization:

"The reason then for the seriousness of the problem here arises not from the fact that the particular conversations were not specifically described and given specific prior authorization, but rather from the unmanageability generally of electronic surveillance. The area is peculiarly sensitive due to its effort to probe the thoughts of the man who is the object of the search. Once the listening commences it becomes impossible to turn it off when a subject other than one which is authorized is overheard. It would be the height of unreasonableness to distinguish between information specifically authorized and that which is unanticipated and which develops in the course of an authorized search such as that involved here. It would be irrational to hold that officers authorized to listen to conversations about drug traffic, upon learning that a bank robbery is to occur, must at once close down the project and not use the information to prevent the robbery since the information is tainted. It would be demoralizing to allow the bank to be robbed while the investigators stood by helpless to prevent the occurrence. Harder cases can be imagined. For example, in electronic surveillance of organized criminals involved in gambling, information might be intercepted disclosing a conspiracy to commit murder. Surely the officials must be empowered to use this information notwithstanding the lack of specific prior authorization.

"As we view it, Congress was seeking to deal realistically with highly complex problems in accordance with the demands of the Constitution. We are unable to say that the product fails to satisfy the Constitution. Every effort has been made to comply with the requirements of *Berger* and *Katz*. Section 2518 (4) of Title III is as precise and discriminate in its approach as are the demands of *Berger* and *Katz*. It requires * * * that each order identify the person whose communications are being intercepted, describe the nature and location of the communications

facilities or the place where authority is granted, particularly describe the type of communication sought to be intercepted and a statement of the particular offense to which it relates, identity of the agency authorizing the application, and finally the period of time during which the interception is authorized, including a statement as to whether the interception shall automatically terminate when the communication has been first obtained. Thus, the statute calls for the most careful scrutiny of the application and for specific findings and restrictions by the judge to whom the application is presented.

"We must presume that an authorization order drafted in accordance with this section will impose strict limitations on the officer who is to execute the authorization. We cannot presume that it will grant a roving commission or general warrant to seize any and all conversations coming into the area covered by the device. A judge will surely scrutinize any application and will scrupulously impose the restrictions required by the statute and by the decisions." Slip Opinion at pp. 23-27.

█ Much of the rationale of the above opinion is applicable to the instant case. Just as in *Cox, supra,* there was an unanticipated interception of conversations relating to crimes other than those anticipated in the authorization order herein. The affidavit named Cott and the probable cause relating to his activities but it could not be known and anticipated who would call him, or whom he might call or what other persons would visit his home and use his phone. Those conversations lawfully intercepted incriminated other persons than those specified in the Order allowing the wiretap. Here, too, we are faced with that kind of "typical" situation, probably encountered more often than not, in cases involving electronic surveillance. The concluding words in *Cox v. United States, supra,* we find most persuasive in holding, as we do, that the Colorado Statutory scheme is constitutional:

"In summary then, we uphold the statute on the basis

that it demands an original authorization in accordance with the mandate of *Berger v. New York, supra,* and we do so upon the basis that the nature and probable consequence of authorized wiretapping is discovery of unanticipated and undescribed communications. The very nature of this form of invasion is conducive to producing unexpected information. If wiretapping is to be validated, and *Berger, Osborn* and *Katz* recognize its validity, then the interception and use of information which is so related to the original search is not to be excluded. In other words, Congress has dealt with the problem about as well as could have been expected considering the nature and character of the subject matter and its consequential incidents. The defendant's contention is rejected."

## IV.

IS THE COLORADO WIRETAP STATUTE VIOLATIVE OF EITHER THE 1934 FEDERAL COMMUNICATIONS ACT OR TITLE III OF THE 1968 OMNIBUS CRIME CONTROL AND SAFE STREETS ACT?

The defendants point out in this regard that the crimes for which a wiretap order may potentially be issued in Colorado include misdemeanors, the punishment for which is less than one year. The 1968 Federal Act restricts wiretap orders to "major crimes," the punishment for which is one year or more. The defendants argue that such federal law has preempted the field, and therefore any state law which is broader or more permissive than the federal standard is invalid. Any offense not listed within the appropriate section of the 1968 Federal Act is a prohibited area of wiretapping and therefore forbidden by the 1934 Federal Communications Act.

The congressional findings pertaining to and preceding the 1968 Federal Act included the following:

"On the basis of its own investigations and of published studies, the Congress makes the following findings: * * * (b) In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court

and administrative proceedings, and to prevent the obstruction of interstate commerce, it is necessary for Congress to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized, to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings * * *

(d.) To safeguard the privacy of innocent persons, the interception of wire or oral communications where none of the parties to the communication has consented to the interception should be allowed *only* when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court. Interception of wire and oral communications should further *be limited to certain major types of offenses and specific categories of crime* with assurances that the interception is justified and that the information obtained thereby will not be misused." Section 801. Pub. L. 90-351. (Emphasis added.)

These findings were later incorporated into a specific enumeration of crimes and offenses within the 1968 Omnibus Crime Control and Safe Streets Act:

"The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant *in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation* of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of *murder, kidnapping, gambling, robbery, bri-*

*bery, extortion, or dealing in narcotic drugs, marihuana (sic) or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses."* 18 U.S.C. § 2516 (2) (Emphasis added.)

C.R.S. 1963, 48-5-20, violations of which have been included within the crimes enumerated in the Colorado 1969 wiretap statute, specifies what acts involving narcotics constitute violations of state law, and the penalties for violations thereof.

The crux of the defendants' argument in this regard is apparently as follows: Since the penalty for some of the crimes involving narcotics is less than one year in jail (*e.g.,* the penalty for the unlawful use or possession of narcotic drugs under C.R.S. 1963, 48-5-20 (5) is six months to one year in the county jail), the *entire* Colorado wiretap statute is in violation of the 1968 Federal Act, *supra,* which limits those offenses for which wiretapping is allowable to those "punishable by imprisonment for more than one year."

The applicable language of section 2516 (2) of the Federal Act, which pertinent portion provides:
"[W]hen such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana (sic) or other dangerous drugs, or other crime dangerous to life, limb, or property *and punishable by imprisonment for more than one year* * * *." Id. (Emphasis added.)

■ We hold that defendants do not possess the requisite standing to allege that crimes for which they have *not been charged* should not be included within the Colorado statute. The crimes for which the defendants have been charged (possession, conspiracy to possess, possession for sale, conspiracy to possess narcotic drugs

for sale) have a minimum penalty of from 2-10 years in the state penitentiary.

If, at some point in the future, we are presented with a case where a wiretap was authorized for a crime the penalty of which is less than one year's imprisonment, a determination will have to be made regarding the intent of the language of the Federal Act. Even a finding at that time that such lesser crimes were not intended by Congress to be included would not render the *entire* statute invalid, but would merely be grounds for suppression with a recognition to restrict application of the statute to crimes such as those with which defendants herein are charged.

## V.

WAS THE WIRETAP ORDER ISSUED HEREIN VIO-LATIVE OF THE COLORADO WIRETAP STATUTE?

(A) Defendant Martin argues that the evidence obtained should be suppressed as to him, inasmuch as he was not specifically named in the Affidavit presented to the judge issuing the order, although his identity was known at that time. In support of this contention, the following language, contained in both the Colorado and Federal statute, is cited:

"(5) (a) Each order authorizing or approving wiretapping or eavesdropping shall specify:

(b) The identity of the person, if known, whose communications are to be intercepted; * * *" 1969 Perm. Supp., C.R.S. 1963, 40-4-30 (See also 18 U.S.C., §2518(4).)

Those portions of the "Order Granting the Wiretap" applicable to this contention would appear to include the following:

"THE COURT from the Affidavit and from the testimony finds that the normal investigative procedures have been tried and utilized by both the Littleton Police Department and the Denver Police Department, as well as the Federal Bureau of Narcotics and Drug Abuse; that these have failed; that continued use of these normal methods

will be unlikely to be successful in developing the information necessary in this matter; that there is probable cause to believe that the facilities from which the wire communications are to be intercepted are being used in connection with the commission of the offense; that they are under the possession, control and listed in the name of and commonly used by ELDON COTT, the person who is alleged to have been involved in the offense for which such wire tapping or eavesdropping is sought; that the Denver and Littleton Police Departments are hereby authorized to intercept oral and telephonic communications on telephone 798-5036, which telephone instrument is located at 946 West Berry Ave., Littleton, Colorado, and is used extensively by ELDON COTT, whose communications are sought to be intercepted.

"THE COURT directs that such interception of communications shall be under the control and direction of Lt. Walter Chin of the Littleton Police Department and Detective Ronald L. Pietrafeso of the Denver Police Department; that this telephone may be tapped in accordance with the provisions of Chapter 40, Article 4, 1963 Colorado Revised Statutes, as amended, *in connection with the investigation of said ELDON COTT and others for their involvement in the crime of possession and sale of marijuana.*" (Emphasis added.)

Although Section 40-4-30 (2) (c) of the Colorado statute does provide that the identity of the person allegedly committing the offense be included in the application or affidavit, there are the following provisions from Section 40-4-30 (4):

"(a) Upon such application, the judge may enter an ex parte order, as requested or as modified, authorizing or approving wiretapping or eavesdropping within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that:

"(b) There is probable cause for belief that a person is committing, has committed, or is about to commit a par-

ticular offense enumerated in this section; * * * "

We conclude that the inadvertent discovery of Martin's involvement through the interceptions is covered by the discussion under III-C of this opinion.

(B) Defendant Martin also argues that Section 40-4-30 (15) of the Colorado Wiretap Statute requires that application be made to the court "as soon as practicable," after information as to offenses other than those specified in the authorization are intercepted. Thus, he asserts, such application should have been made immediately after he was a party to overheard conversations. The precise language of section 40-4-30(15) reads as follows:

"When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized in this section, intercepts wire or oral communications relating *to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (11) and (12) of this section.* Such contents and evidence derived therefrom, may be used under subsection (13) of this section when authorized or approved by a judge of competent jurisdiction, when such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this section. Such application shall be made as soon as practicable." *Id.* (Emphasis added.)

It is apparent from a close reading of the above language that the provisions of Section 40-4-30(15) extend to *offenses* different from those named within the authorization order and not to *persons* other than those named. Defendant Martin has been charged only with crimes enumerated in the "Order Granting Wiretap," namely, crimes involving the "possession and sale of marijuana."

Other, subsidiary, arguments raised by one or more of the defendants have been considered and are determined to likewise be without merit.

The rulings of the court in Arapahoe County granting the defendants' Motions to Suppress are reversed, and the rulings of the court in Denver denying the defendants' motions to suppress are affirmed.