The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Thomas Lynn O'HARA III,
Defendant–Appellant.

No. 07CA2311.

Colorado Court of Appeals,
Div. V.

May 13, 2010.*

* Prior opinion announced March 4, 2010, Withdrawn; Petition for Rehearing Granted.

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Davide C. Migliaccio, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Thomas Lynn O'Hara III, was charged with and convicted of distribution of a schedule II controlled substance, adjudicated a habitual criminal, and sentenced to ninety-six years in the Department of Corrections. He challenges the admission of wiretap evidence and the sufficiency of his *Curtis* advisement on appeal. Because there is no finding before us that the elected district attorney authorized the wiretap application, we remand for further proceedings to determine whether the elected district attorney authorized the wiretap application.

## I. Factual and Procedural Background

This case arises from a joint law enforcement task force operation based in Grand Junction, Colorado. The operation's purpose was to target major illegal drug dealers in the area. As part of the operation, task force officers, in conjunction with the local district attorney's office, applied for and received orders authorizing wiretaps on two phones belonging to R.P., a suspected drug dealer. Evidence gathered from these wiretaps implicated defendant as R.P.'s supplier of methamphetamine. Defendant challenged the admissibility of the wiretap evidence with a motion in limine. Following a hearing, the court found the evidence admissible. Defendant renews his challenge to the wiretap evidence on appeal.

## II. The Wiretap Application

Defendant argues that the application for the wiretap was fatally defective because the applicant was a Drug Enforcement Agency (DEA) task force officer (TFO), not the elected district attorney. Defendant argues that the Colorado wiretap statute requires that the elected district attorney must personally apply for the wiretap, and that this obligation cannot be delegated. Defendant further argues that the elected district attorney did not authorize the wiretap. We disagree with defendant's first contention and remand for further proceedings regarding the second.

### A. Standard of Review

Our review requires us to interpret provisions of the federal and Colorado wiretap statutes. Statutory interpretation is a question of law, subject to de novo review. *Alvarado v. People*, 132 P.3d 1205, 1207 (Colo. 2006).

Because defendant properly objected to the admission of the wiretap evidence, he preserved the issue for appeal. *See Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1330–31 (Colo.1986).

In construing the meaning of a statute, we are to determine and give effect to the intent of the legislature. *M.S. v. People*, 812 P.2d 632, 635 (Colo.1991). The statute is to be construed to further the legislative intent represented by the statutory scheme. *State v. Nieto*, 993 P.2d 493, 501 (Colo.2000). To discern the legislative intent, we look first to the plain and ordinary meaning of the statutory language, giving words and phrases their commonly accepted and understood meaning. *Mason v. People*, 932 P.2d 1377, 1378 (Colo.1997). We are to give effect to every word and are not to adopt a construction that renders any term superfluous. *Slack v. Farmers Ins. Exch.*, 5 P.3d 280, 284 (Colo.2000). Where the intended scope of a statute is ambiguous, we may look to the statute's textual context as well as the legislative history to determine the General Assembly's intent. § 2–4–203, C.R.S.2009; *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 721 (Colo.1999).

■ Colorado's wiretap statute, section 16–15–102, C.R.S.2009, provides guidelines for the lawful authorization of wiretaps in the state. It is closely patterned on the federal wiretap statute, 18 U.S.C. §§ 2510–2520 (Title III), first passed as Title III of the Omnibus Crime Control and Safe Streets Act of 1968. *People v. Wahl*, 716 P.2d 123, 128 (Colo.1986). Colorado's wiretap statute was enacted pursuant to Title III's provision authorizing states to enact laws governing state law enforcement agents' use of wiretaps. 18 U.S.C. § 2516(2). The Colorado statute was designed to implement the policies of Title III. *Wahl*, 716 P.2d at 128. Therefore, federal authorities interpreting Title III should be accorded "great weight" in interpreting the Colorado statute. *Id.; see People v. Martin*, 176 Colo. 322, 328, 490 P.2d 924, 927 (1971).

■ On review of the trial court's decision not to suppress the wiretap evidence, reversal is required for a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505, 527, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

**B. Interpreting Section 16–15–102**

■ Defendant argues that the application for the wiretap in this case was defective because the elected district attorney did not personally apply for the wiretap as required by section 16–15–102. Here, for the first time, we are asked to interpret the Colorado statute's requirement that court orders permitting wiretaps be issued only "upon application of the attorney general or a district attorney." § 16–15–102(1)(a), C.R.S.2009. We conclude that, like the federal statute, section 16–15–102 requires that the attorney general or a district attorney specifically authorize a specific wiretap application, but that the elected official need not sign or personally submit the application. Here there was no specific authorization of a specific wiretap application. Further, there is no finding by the trial court that the district attorney specifically authorized the wiretap application and nothing in the record would support such a finding in any event.

Both Title III and section 16–15–102 establish procedures for obtaining orders authorizing wiretaps. Title III establishes a three-tiered procedure for obtaining authorization to intercept wire or oral communications, (1) "a duly-authorized law enforcement officer must obtain approval from the Attorney General of the United States or a specially designated assistant attorney general in order to apply to a federal judge for a wiretap"; (2) "once such approval is obtained, the officer must present a written application for a wiretap to the judge"; and (3) "the judge must make certain enumerated findings and issue an ex parte order containing specified elements." *United States v. Castillo–Garcia*, 920 F.Supp. 1537, 1543 (D.Colo.1996), *aff'd in part and rev'd in part*, 117 F.3d 1179 (10th Cir.1997), *and overruled on other grounds by United States v. Ramirez–Encarnacion*, 291 F.3d 1219, 1222 n. 1 (10th Cir.2002).

The first tier of Title III's procedure, requiring the approval of the United States Attorney General or a specially designated assistant attorney general, achieves an important purpose of Title III: centralizing the

authority to authorize wiretap applications. See *Giordano*, 416 U.S. at 512–23, 94 S.Ct. 1820, for a comprehensive analysis of the history of Title III and its requirement that wiretap applications be authorized by a senior, publicly accountable official.

Title III accomplishes this goal in the context of state-authorized wiretaps as well. In addition to establishing the application requirements for a federal wiretap, Title III provides for the existence of state-issued wiretaps, though the provision is not self-executing. Under Title III, state law enforcement officers may obtain state-issued wiretap orders, subject to the application requirements of both Title III and the relevant state statutes:

> The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an order authorizing, or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made....

18 U.S.C. § 2516(2); *see United States v. Geller*, 560 F.Supp. 1309, 1312 (E.D.Pa.1983) (holding that Title III sets the outer limits for government intrusion via wiretaps), *aff'd sub nom. United States v. DeMaise*, 745 F.2d 49 (3d Cir.1984) (unpublished table decision). 18 U.S.C. § 2518 establishes the content requirements for a federal wiretap application.

Colorado's wiretap statute, section 16–15–102, was enacted pursuant to Title III's provision for the authorization of state wiretap orders. Section 16–15–102 adopts a parallel procedure to that of Title III, though instead of requiring the "authorization" of a designated official, the Colorado statute requires the attorney general or district attorney to "apply" for a wiretap, following the language

of 18 U.S.C. § 2516(2) quoted above. At the time of the offense, the statute provided, as it does now, in relevant part:

> An ex parte order authorizing or approving the interception of any wire, oral, or electronic communication may be issued by any judge of competent jurisdiction of the state of Colorado upon application of the attorney general or a district attorney....

§ 16–15–102(1)(a); *cf.* 18 U.S.C. § 2516(2). The language of section 16–15–102 describing the requirements for the wiretap application tracks the language of Title III. *Compare* 18 U.S.C. § 2518(1) *with* § 16–15–102(2), C.R.S. 2009.

In *People v. Milnes*, 186 Colo. 409, 527 P.2d 1163 (1974), the Colorado Supreme Court noted that "[t]here is no doubt that the district attorney must personally *initiate* the wiretap according to the plain language of [the statute], and that he must apply personally for any extension of the duration of the wiretap." *Id.* at 416, 527 P.2d at 1167 (emphasis added). We consider here whether the district attorney may "initiate" the wiretap by authorizing a subordinate to draft and submit an application to the issuing court, or whether he must execute it personally. No Colorado appellate court has addressed the issue.

A host of federal decisions have addressed the issue with regard to Title III. As discussed above, the key language in Title III differs slightly from that of the Colorado statute: Title III empowers a district attorney to "authorize" an application while the Colorado statute requires the district attorney to "apply" for a wiretap order.

The Second Circuit addressed this difference in *United States v. Tortorello*, 480 F.2d 764 (2d Cir.1973). In *Tortorello*, the district attorney authorized his subordinate to apply for a wiretap, but did not personally appear before the issuing state judge, a failure which *Tortorello* claimed voided the application. *Id.* at 770–71. The underlying state statute in *Tortorello* also contained the "apply" language found in 16–15–102. The *Tortorello* court concluded that in the context of the purpose of Title III, authorization and application were essentially identical.

The requirement for federal applications is that the Attorney General "authorize" an application, while the requirement for state applications is that the "principal prosecuting attorney ... may apply" for an order. We decline to attribute to this language difference the significance claimed by Tortorello. The purpose of both sections is the same.

*Id.* at 777 n. 9. The court then held that the provision did not require the district attorney's appearance before the issuing judge. *Id.* at 777.

A similar interpretation of section 16–15–102 is supported by (1) the language and purpose of Title III, *Wahl,* 716 P.2d at 128; (2) the similarity in the language of Title III and section 16–15–102, *compare* Ch. 81, sec. 1, § 16–15–102(1)(a), 1991 Colo. Sess. Laws 433, *and* § 16–15–102 *with* 18 U.S.C. §§ 2516(2) & 2518; and (3) federal authorities interpreting Title III. We give "great weight" to those authorities in interpreting the Colorado statute. *Id.; see Martin,* 176 Colo. at 328, 490 P.2d at 927.

Federal decisions interpreting the authorization requirement of Title III conclude that so long as a designated official authorizes the application, there is no requirement that the official also personally make the application. *See Giordano,* 416 U.S. at 507–08, 94 S.Ct. 1820 (suppressing wiretap evidence where application was made by the Attorney General's executive assistant without the Attorney General's approval); *United States v. Chavez,* 416 U.S. 562, 564–65, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974) (holding that no suppression was required where the Assistant Attorney General was misidentified as the official authorizing the application where the Attorney General had actually given the authorization); *United States ex rel. Machi v. U.S. Dep't of Probation & Parole,* 536 F.2d 179, 183–84 (7th Cir.1976) (holding that telephonic authorization from the Attorney General was sufficient); *United States v. Ceraso,* 467 F.2d 647, 651–52 (3d Cir.1972) (holding that once the Attorney General approves an application in fact, the authorization requirement is satisfied); *United States v. Cox,* 462 F.2d 1293, 1300 (8th Cir.1972) (holding that once the Attorney General has approved an applica-

tion for electronic surveillance, further ministerial acts are unimportant).

A similar interpretation of 16–15–102(1)(a) is supported by subsequent uses of the word "authorize" in the statute: each application shall include "[t]he identity of the investigative or law enforcement officer making the application, *and* the officer authorizing the application,*" § 16–15–102(2)(a) (emphasis added); an application shall include "[a] complete statement of the facts concerning all previous applications known to the individual authorizing and making the application," § 16–15–102(2)(e); each order shall specify "[t]he identity ... of the person authorizing the application," § 16–15–102(5)(d); and the requirement to specify the interception location is not applicable where "[t]he application is made by an investigative or law enforcement officer *and is approved by* the attorney general or the district attorney," § 16–15–102(17)(a)(I)(A) & (II)(A) (emphasis added). In referring separately to the individual making the application and to the individual approving the application, the statute contemplates instances in which the elected official authorizes the application while a law enforcement official submits the application to the court.

We acknowledge that where state legislatures have enacted state wiretap statutes pursuant to Title III, their statutes can be more restrictive than Title III. *See* 18 U.S.C. § 2516(2). Nevertheless, many states have interpreted language similar to that used in our section 16–15–102 so as to permit authorization of the wiretap application by a designated official and have rejected the requirement that the application be personally made. *Compare* 18 U.S.C. §§ 2516(2), 2518, *with* Fla. Stat. § 934.07 (2009) (upheld in *State v. Birs,* 394 So.2d 1054, 1056 (Fla.Dist. Ct.App.1981)), *and* 725 Ill. Comp. Stat. 5/108A–1 (2009) (upheld in *People v. Lewis,* 84 Ill.App.3d 556, 40 Ill.Dec. 310, 406 N.E.2d 11, 14 (1980)), *and* N.J. Stat. Ann. § 2A:156A–8 (2009) (upheld in *State v. Cocuzza,* 123 N.J.Super. 14, 301 A.2d 204, 207–08 (N.J.Co.Ct. Law Div.1973), as to the authorization in writing requirement, but limited as to delegation of authorization to a

nondesignated official, like a deputy district attorney).

While a few state court decisions have held that a district attorney must personally apply for the wiretap, we are convinced that they are in the minority and decline to follow them. *See, e.g., In re Olander*, 213 Kan. 282, 515 P.2d 1211, 1214–15 (1973) (noting that while Title III does not require the personal appearance of the principal prosecuting attorney before the issuing judge, the state statute does); *Poore v. State*, 39 Md.App. 44, 384 A.2d 103, 112 (Ct.Spec.App.1978) (holding that the power to apply for wiretaps is personal to the principal prosecuting attorney); *State v. Frink*, 296 Minn. 57, 206 N.W.2d 664, 674 (1973) (holding that the power to apply for wiretaps is personal to the principal prosecuting attorney, where the application was made without knowledge of the principal prosecutor).

Of these decisions, *Olander* is the most heavily relied upon by defendant. In *Olander*, the wiretap application was authorized by the county attorney, a designated official with the authority to apply for a wiretap, but was signed and submitted by the assistant county attorney. 515 P.2d at 1212. The language of the Kansas wiretap statute parallels the "apply" language of the Colorado statute. *Compare* Kan. Stat. Ann. § 22–2513 (1972 Supp.) (repealed 1974), *with* § 16–15–102. In *Olander*, the prosecution argued that evidence of the county attorney's authorization need not appear in the record of the proceedings before the issuing judge, but may be presented at a later suppression hearing. 515 P.2d at 1214. The application had been signed and submitted by an assistant county attorney purporting to act with authorization of a statutorily designated official, the county attorney. In considering the issue and rejecting the prosecution's argument, the Kansas Supreme Court rejected the reasoning of *Tortorello*, 480 F.2d 764, and determined that the Kansas statute was more restrictive than Title III because it required its principal prosecuting officers to appear personally before the issuing judge. 515 P.2d at 1213–15. In doing so, it followed the Minnesota Supreme Court's rationale in *Frink*, 206 N.W.2d at 674 (concluding that

Congress could have expressly designated assistant county attorneys as designated officials in 18 U.S.C. § 2516(1) if it had chosen to do so). Because the assistant county attorney was not a designated official who could make an application for the wiretap, *Olander* ruled the wiretap illegal. 515 P.2d at 1211. It is clear that the *Olander* and *Frink* courts were willing to conflate the concepts of "application" and "authorization" and read their respective wiretap statutes to require the personal application by a specifically designated prosecuting attorney.

We agree with *Tortorello* and the well-reasoned dissent in *Olander*, and hold that the authorization of the designated official provides a sufficient constitutional safeguard against unlawful government intrusion into the privacy of its citizens via interceptions of oral or electronic communications. *See id.* at 1215–17; *see also Commonwealth v. Vitello*, 367 Mass. 224, 327 N.E.2d 819, 825–26 (1975) (focusing the inquiry on the authorization of the wiretap where the state statute uses "application" language); *State v. Monsrud*, 337 N.W.2d 652, 655–56 (Minn.1983) (modifying *Frink* by holding that the county attorney need not personally appear before the issuing judge). The authorization provisions of both Title III and section 16–15–102 focus on the authorization of wiretap applications, rather than subsequent ministerial acts.

### C. Facial Sufficiency of the Wiretap Application

■ Section 16–15–102(10), C.R.S.2009, provides for suppression of wiretap evidence if (1) "[t]he communication was unlawfully intercepted" or (2) "the order of authorization or approval under which it was intercepted is insufficient on its face." Because we have concluded that the relevant inquiry is whether the designated official actually authorized the application, it is clear that the absence of the district attorney's signature on the application does not render the application insufficient on its face, and is therefore not fatal. *See* § 16–15–102 (lacking a signature requirement); *United States v. Vogt*, 760 F.2d 206, 208 (8th Cir.1985) (holding telephonic authorization sufficient); *Machi*, 536 F.2d at 183–84 (same). Defendant does

not challenge the wiretap application on other facial grounds.

We therefore turn to whether these communications were "unlawfully intercepted," and ask whether they were intercepted pursuant to an application authorized in fact by the district attorney. If so, the application satisfies *Milnes*, section 16–15–102, and Title III.

### D. Authorization of the Wiretap

█ In this case, the wiretap application submitted to the issuing judge was prepared by a DEA agent and a deputy district attorney. We conclude that the record does not sufficiently demonstrate that the elected district attorney initiated and authorized the application.

During the hearing on defendant's motion to suppress the wiretap evidence, the DEA TFO who signed the wiretap application took the stand, and was questioned by the deputy district attorney involved in the case. The testimony concerned the involvement of the district attorney.

Q. Had I expressed concerns to you about whether or not we would be able to do a wiretap at that point?

A. Yes, absolutely.

Q. Ultimately, did I tell you that I needed to discuss this with all the supervisors before I could give you an answer?

A. Yes.

Q. On a Saturday afternoon, did I contact you and indicate to you that I had done what I needed to do to give you an answer?

A. Yes, you did.

Q. At that point, what did I tell you as to whether or not we would approve doing the wiretap?

A. You said that was going to be fine with your superiors; that we were going to be able to proceed with a wiretap. . . .

Q. [W]hen you drafted those documents, did you put anything indicating who had authorized that?

A. Yes, I did.

Q. Where did you put that?

A. I put that on Page 2 of the initial document.

Q. Is that a full and complete copy of the application that you submitted?

A. It is a full and complete copy except for the supplemental affidavit where we named the informant.

Q. As well as the order?

A. As well as the order, yes.

Q. On Page 2 of that document, what paragraph is it that you listed who had authorized that?

A. It's Page 2, Paragraph 2, at the very end of Paragraph 2.

Q. What language did you use indicating that this affidavit was authorized as it relates to the District Attorney's Office?

A. May I just read it, or would you like me to paraphrase it?

Q. If you could read it directly as a quote, please.

A. "Application for this order is being submitted by Peter G. Hautzinger, District Attorney for the 21st Judicial District, state of Colorado, his appointed Deputy District Attorney, Daniel P. Rubinstein and I."

Q. Did you sign that and swear to it under oath?

A. Yes, I did.

Q. To the best of your knowledge, when you signed and swore that under oath, was that information accurate?

A. Absolutely.

Q. Were there things that occurred after that that would corroborate to you in your mind that it was, in fact, with the knowledge and authorization of Pete Hautzinger, the District Attorney?

A. Yes, there was [sic].

Q. Can you explain those to the Court?

A. Yes. First of all, like I mentioned earlier, you had told me that you had spoken with him and he had authorized the staffing levels for your office to assist us in this investigation. Also, I spent numerous hours in your office at the District Attorney's Office where Pete Hautzinger would come in, in person and talk to you and I in person about the investigation and how it

was going and what was going on within the investigation.

Q. Was it evident to you from those discussions that he was fully aware what [sic] of what we were doing?

A. Yes.

Neither the district attorney nor the deputy district attorney testified at the suppression hearing. The prosecution called the deputy district attorney to testify but defense counsel objected, asserting that, if called to testify, the deputy should be disqualified from continuing in the case. The trial court then asked for an offer of proof, rather than determining the issue of disqualification. The prosecution then made an offer of proof regarding the deputy's testimony, stating that he "was involved in the case ... from the beginning of the court case ... [and] prior to that in the investigation of the matters...." The offer of proof stated that the deputy would testify to "how both he and his superior, the elected district attorney—he would be able to testify to the process they use in determining whether to go forward on a wiretap." In addition, the offer of proof stated that the deputy "would specifically testify to what happened in this particular case [regarding the authorization issue]."

The court then noted that the proposed testimony would go "to the issue that the defense brought up as to whether the application for the wiretap was authorized by the D.A." Again, the defense objected, asserting that the authorization had to be in writing and that the deputy could not testify under the Code of Professional Responsibility.

Rather than rule on the issue of disqualification, the trial court stated that it was "satisfied from the testimony" and the exhibits. The trial court found that "the District Attorney was part of this whole investigation from the get-go." In its written order on defendant's motion to suppress, the court found that it "appears that the elected district attorney was aware of and involved in the preparation of the wiretap documents, and the affidavit submitted to Mesa County Judge Bottger also contain [sic] [the TFO's] assertion that the documents were submitted on behalf of the District Attorney." The court found that the "spirit and the letter" of

section 16–15–102 were followed, and denied defendant's motion to suppress. In light of these findings, it is not clear to us that the trial court applied the proper standard.

If the district attorney would have personally signed the application, we could presume that he had properly exercised the judgment required by the statute. *See United States v. Smith*, 726 F.2d 852, 859 (1st Cir.1984) ("If the preferred practice ... of the district attorney cosigning every application had been followed, there would be no questioning the sufficiency of his authorization."); *United States v. Turner*, 528 F.2d 143, 151 (9th Cir.1975) ("[I]t is to be presumed that the officer has properly exercised the judgment called for by the statute when he affixes his signature to an order authorizing an application."). The record before us does not reflect an unambiguous wiretap authorization by the district attorney, nor did the court enter an express finding that the wiretap was authorized. To the extent that the court's comments regarding the "letter of the law" can be interpreted to be a finding that the elected district attorney actually authorized the wiretap application, we are unable to find evidence in the record that would support such a finding. Rather, both the testimony at the suppression hearing and the court's order reflect that the district attorney was aware of and involved in the investigation, nothing more. It is the district attorney's specific authorization of a specific wiretap application, not his involvement in the investigation, which safeguards the public's privacy against this extraordinary investigative device and satisfies the requirements of the state and federal wiretap statutes. Such an authorization satisfies *Milnes*, section 16–15–102, and Title III.

■ Because the applications for extensions of the original wiretap order incorporated the initial application and were submitted pursuant to the same procedures as the initial application, the extensions of the wiretap stand or fall with the lawfulness of the original wiretap order. *See Giordano*, 416 U.S. at 532–33, 94 S.Ct. 1820.

■ It appears from the record that the People were prepared to present evidence

that the wiretap application was authorized by the elected district attorney but rested in any further attempt to present supporting evidence, in part, because of the trial court's order. Under these circumstances, we remand for a hearing regarding the application's authorization and for further findings regarding the same. If the trial court determines that the wiretap and its extensions were authorized by the elected district attorney, then the judgment of conviction is affirmed. If, however, the trial court determines that the elected district attorney did not authorize the wiretap or extensions, we reverse O'Hara's conviction because it runs afoul of *Milnes*, section 16–15–102, C.R.S. 2009, and Title III.

### III.   *Curtis* Advisement

■ On appeal, defendant argues that his *Curtis* advisement was deficient because he was not advised of his right to testify against the advice of counsel. He also argues that the court erred in failing to make adequate findings concerning his waiver of that right. The prosecution argues that the sufficiency of a defendant's *Curtis* advisement and waiver of his right to testify is only properly considered in post-conviction proceedings under *People v. Blehm*, 983 P.2d 779, 792 (Colo. 1999).

We agree with the prosecution, and conclude that the inquiry into the sufficiency of O'Hara's *Curtis* advisement is foreclosed by *Blehm*. *Blehm* holds that allegations of an invalid waiver of the right to testify "may be addressed only in post-conviction proceedings." *Id.* at 797. We are therefore unable to consider O'Hara's *Curtis* arguments here.

The case is remanded for further proceedings consistent with this opinion.

Judge RUSSEL and Judge LICHTENSTEIN concur.