UNITED STATES of America, Plaintiff-Appellant,

v.

Guy Mickey McNULTY, George O'Brien, Theodore Tulper, Donald Staadts, James Nestoff and Dennis Valley, Defendants-Appellees.

Nos. 81–2116 to 81–2119, 81–2130 and 81–2131.

United States Court of Appeals, Tenth Circuit.

March 3, 1983.

On Rehearing En Banc April 5, 1984.

Charles Torres, Asst. U.S. Atty., Denver, Colo. (Joseph Dolan, U.S. Atty., Robert Gay Guthrie, Asst. U.S. Atty., Denver, Colo., with him on the brief), for plaintiff-appellant.

Michael G. Katz, Federal Public Defender, Denver, Colo., for defendant-appellee McNulty.

Gary Lozow, Denver, Colo., for defendant-appellee O'Brien.

Isaac H. Kaiser, Denver, Colo., for defendant-appellee Nestoff.

Scott H. Robinson, Gerash & Robinson, Denver, Colo. (Walter L. Gerash, Gerash & Robinson, Denver, Colo., with him on the brief), for defendant-appellee Dennis Valley.

Joseph Saint-Veltrie and Howard M. Mullen, Denver, Colo., submitted an amicus brief for Albert C. Levy.

Before DOYLE and SEYMOUR, Circuit Judges, and ANDERSON, District Judge *.

ALDON J. ANDERSON, District Judge.

Because I find that the wiretap order issued by Colorado District Court Judge Robert F. Kelly complied with the requirements of the Colorado wiretapping statute, as well as the federal statute, I find it unnecessary to reach the question addressed by Judge Doyle. Since the order complied with both statutes, it is not necessary to determine which statute applies in order to determine the result in this case.

The court below suppressed the evidence obtained pursuant to the state judge's wiretap order, on the grounds that the order did not comply with Colo.Rev.Stat. § 16–15–102 (1978), the Colorado wiretapping statute. In essence, this statute authorizes an ex parte wiretap order if there is probable cause to believe that evidence will be obtained of the commission of any one of

* Honorable Aldon J. Anderson, Chief Judge, District of Utah, sitting by designation.

several enumerated offenses. Colo.Rev. Stat. § 16–15–102(4) (1978).[1] One of the enumerated offenses is professional gambling. Colo.Rev.Stat. § 16–15–102(1)(a)(III) (1978).[2] However, the above provisions are modified by § 16–15–102(1)(b), which provides that "[a]nything to the contrary notwithstanding, an ex parte order for wiretapping or eavesdropping may be issued only for a crime specified in this subsection (1) for which a felony penalty is authorized upon conviction."

Of the crimes listed in the wiretap application, only professional gambling and criminal conspiracy are crimes for which a wiretap is authorized by the statute.[3] Professional gambling may be either a misdemeanor or felony offense, depending on whether the offender is classified as a "re-

1. Subsection (4) of the statute provides as follows:

 (4) Upon an application, the judge may enter an ex parte order, as requested or as modified, authorizing or approving wiretapping or eavesdropping within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that:
 (a) There is probable cause for belief that a person is committing, has committed, or is about to commit a particular offense enumerated in this section;
 (b) There is probable cause for belief that particular communications concerning that offense will be obtained through the interception;
 (c) Normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous;
 (d) There is probable cause for belief that the facilities from which or the place where the wire or oral communications are to be intercepted are being used or are about to be used, in connection with the commission of an offense, or are leased to, listed in the name of, or commonly used by the person alleged to be involved in the commission of the offense.

2. Subsection (1)(a) of the statute provides as follows:

 (1)(a) An ex parte order for wiretapping or eavesdropping, or both, as those offenses are described in sections 18–9–302 to 18–9–304, C.R.S.1973, may be issued by any judge of competent jurisdiction of the state of Colorado upon application of the attorney general or a district attorney, showing by affidavit that there is probable cause to believe that evidence will be obtained of the commission of any one of the crimes enumerated in this subsection (1) or that one of said enumerated crimes will be committed:
 (I) Murder in the first or second degree as defined in sections 18–3–102 and 18–3–103, C.R.S.1973;
 (II) Kidnapping in the first or second degree as defined in sections 18–3–301 and 18–3–302, C.R.S.1973;
 (III) Gambling, meaning professional gambling, as defined in section 18–10–102(3) [sic; should be 102(8) ], C.R.S.1973, and subject to

prosecution under section 18–10–103(2), C.R.S.1973;
 (IV) Robbery as defined in section 18–4–301, C.R.S.1973, aggravated robbery as defined in section 18–4–302, C.R.S.1973, or burglary in the first or second degree as defined in sections 18–4–202 and 18–4–203, C.R.S.1973;
 (V) Bribery as defined in section 18–8–302, C.R.S.1973, compensation for past official behavior as defined in section 18–8–303, C.R.S.1973, attempt to influence a public servant as defined in section 18–8–306, C.R.S.1973, designation of supplier as defined in section 18–8–307, C.R.S.1973, or misuse of official information as defined in section 18–8–402, C.R.S.1973;
 (VI) Dealing in narcotic or other dangerous drugs as covered by sections 12–22–322 and 12–22–412, C.R.S.1973, as such offenses are subject to prosecution as felonies;
 (VII) Crimes dangerous to life, limb, or property, meaning extortion, as defined as menacing by use of a deadly weapon in section 18–3–206, C.R.S.1973, theft by means other than the use of force, threat, or intimidation as defined in section 18–4–401(5), C.R.S.1973, arson as defined in sections 18–4–102 to 18–4–105, C.R.S.1973, as these offenses are subject to prosecutions as felonies, assault in the first or second degree as defined in sections 18–3–202 and 18–3–203, C.R.S.1973;
 (VIII) A criminal conspiracy as defined in section 18–2–201, C.R.S.1973, to commit any of the aforementioned enumerated crimes.

3. The District Attorney, in his application for the wiretap order, stated:

 I am informed and do believe that there is probable cause existing that the communications, conversations, or discussions occurring on the above listed telephone, are an element of the crimes defined in C.R.S.1973, 18–10–103, (1) and (2), as amended [gambling and professional gambling], C.R.S.1973, 18–10–105, as amended [possession of a gambling device or record], C.R.S.1973, 18–10–106, as amended [gambling information], C.R.S.1973, 18–10–107, as amended [maintaining a gambling premises], and C.R.S.1973, 18–2–201 as amended [criminal conspiracy].

Record, Vol. I, p. 112.

peating gambling offender." Colo.Rev. Stat. § 18–10–103(2) (1978). A repeating gambling offender is "any person who is convicted of an offense under section 18–10–103(2) or sections 18–10–105 to 18–10–107 within five years after a previous misdemeanor conviction under these sections or a former statute prohibiting gambling activities, or at any time after a previous felony conviction under any of the mentioned sections." Colo.Rev.Stat. § 18–10–102(9) (1978).

The defendants and the court below have focused their attention on defendant McNulty. The affidavit accompanying the wiretap application shows he had a misdemeanor professional gambling conviction in 1979, one year before the wiretap application. Of course, in order for him to be subject to a felony penalty for professional gambling, he must be convicted of that crime within five years of the 1979 misdemeanor conviction. Though it was highly probable that McNulty, if convicted at all, would be convicted within the five year limit, Judge Kelly, in reviewing the wiretap application, could not know for certain that the time requirement would be met. Therefore, reasoned the court below, since this unknown condition subsequent must be satisfied before a "felony penalty is authorized" for the crime under investigation, the wiretap order issued by Judge Kelly did not comply with the requirement of § 16–15–102(1)(b).

Although I question the conclusion reached by the court below as to defendant McNulty,[4] it is not necessary to base my

---

4. The court below and Judge Seymour have interpreted Colo.Rev.Stat. § 16–15–102(1)(b) to mean that a state judge may not issue a wiretap order unless he is absolutely, unequivocally certain that the offender will be subject to a felony penalty upon conviction. I cannot attribute so stringent a meaning to this provision. I prefer to give it a more ordinary, common sense meaning: the crime under investigation must be one for which a felony penalty is provided by law. Under this simple interpretation, the crime of professional gambling meets the requirement of the wiretapping statute, for a felony penalty is one of the two alternative penalties authorized by the professional gambling statute. Colo.Rev. Stat. § 18–10–103(2) (1978). Furthermore, not only is a felony penalty an authorized penalty under the professional gambling statute, but to Judge Kelly, reviewing the wiretap application just one year after McNulty's prior professional gambling conviction, it appeared highly probable that McNulty would in fact be subject to that penalty. The court below acknowledged that "in view of the fact that under state law, criminal cases must come to trial within six months, ... one could reasonably anticipate that [McNulty would be convicted within five years of his 1979 misdemeanor conviction]." Record, Vol. III, p. 46.

A judge considering a wiretap application can never know for certain whether a conviction will result from the investigation. To approve the wiretap, he must have probable cause to believe that the evidence of the specific crime will be obtained. Each felony has its elements which proof at trial must satisfy. In the instant case, for example, at a state trial, the element of prior conviction within five years would have to be shown by the state in order to obtain a felony conviction. But the state judge considering the wiretap application could not know, and is not required to know, whether each element, including the prior gambling conviction within five years, would be proven at trial. His standard is probable cause, and the cases establish that probable cause is a matter of *probabilities*, and must be applied reasonably. *See, e.g., United States v. Rahn*, 511 F.2d 290 (10th Cir.1975); *People v. Lindholm*, 591 P.2d 1032 (Colo.1979). In addition, reviewing courts are to give deference to determinations of probable cause by the issuing judges. *Id.·* Under the circumstances, the court below should have found that the wiretap order, as applied to McNulty, complied with the requirements of the state statute.

This conclusion is, I believe, totally consistent with the intent of the Colorado legislature. Judge Seymour asserts that the "obvious intent" of the Colorado legislature, in passing the wiretapping statute, was to protect privacy by "limiting wiretapping to the investigation of felonies." A look at the history of the felony penalty provision in the Colorado wiretapping legislation, however, reveals that a more probable and more practical legislative purpose behind the felony penalty provision in the state wiretapping statute was to conform the statute to the requirements of the federal provisions.

In 1971, the Colorado wiretapping statute had no requirement that the crime under investigation be a felony. 1971 Sess.Laws, p. 486, § 2. In fact, some of the offenses enumerated in that statute carried misdemeanor penalties of less than one year imprisonment. The Colorado Supreme Court opined in a 1971 case that state authorization of a wiretap for such minor offenses would violate the "punishable by imprisonment for more than one year" language in 18 U.S.C. § 2516, and hence would be "grounds for suppression." *People v. Martin*, 176 Colo. 322, 490 P.2d 924 (1971). In an apparent response to

determination of this case on McNulty's prior misdemeanor professional gambling conviction. I have discovered in the record what the parties and the court below apparently overlooked: the affidavit accompanying the wiretap application clearly shows that defendant Dennis Valley had a prior *felony* professional gambling conviction, which therefore makes the crime under investigation by the wiretap certainly one "for which a felony penalty is authorized upon conviction."

The affidavit accompanying the wiretap application includes a section entitled "Background on Principal Subjects." A biographical sketch of each of the defendants is contained in this section, including the prior criminal record of each. The prior criminal records of both defendant McNulty and defendant Valley are rather voluminous. Item (aa) under the record for Valley notes as follows:

> (aa) Denver, Colorado, April 3, 1974 arrested for gambling, gambling information, professional gambling, conspiracy, pled guilty to professional gambling and conspiracy, received five years at the Colorado State Penitentiary (sentence suspended).

Record at Vol. I, p. 126. It is clear to me, as it was to Judge Kelly, that this conviction must have been a *felony* professional gambling conviction. This conclusion is based on the following observations: (1) a five year sentence is definitely a felony penalty—the most severe misdemeanor penalty is two years imprisonment Colo. Rev.Stat. 18–1–106 (1978); (2) incarceration

in the state penitentiary is a felony penalty—it is a forbidden penalty for a misdemeanor violation unless served concurrently with a term for conviction of a felony, *id.;* (3) item (v) under the prior criminal record of Valley, a misdemeanor gambling conviction in 1970, provides the prior misdemeanor gambling conviction within five years upon which the 1974 felony conviction could have been predicated; (4) the felony penalty could not have been based on the conspiracy charge alone, for the penalty for conspiracy in Colorado depends on the penalty for the underlying crime, *see* Colo.Rev.Stat. § 18–2–201(5) (1978).

Hence, from the affidavit accompanying the wiretap application it appears that defendant Valley had a prior felony professional gambling conviction, making him a "repeating gambling offender" in any subsequent professional gambling prosecution in Colorado and subjecting him to a felony penalty upon conviction. His status certainly meets the requirements of § 16–15–102(1)(b) of the wiretapping statute, if McNulty's does not.

Judge Seymour has underscored the fact that *"[n]owhere did the affidavit allege that the proposed wiretap was for the investigation of a felony."* Seymour, J., dissenting, p. 1262, *infra* (emphasis hers). However, under Colorado law it is not necessary to allege such a conclusion in the application. It is only necessary to allege sufficient facts to support the conclusion of the judge issuing the order. *See, People v. Martin,* 176 Colo. 322, 490 P.2d 924, 926 (Colo.1971).

---

this concern, the Colorado General Assembly amended the wiretapping statute in 1972, conforming it more closely to the federal statute. 1972 Colo.Sess.Laws, pp. 269–71, §§ 1–2. The new statute added the provision now codified at Colo.Rev.Stat. § 16–105–102(1)(b), limiting wiretap orders to only crimes for which a felony penalty is authorized. Since the statutory penalty for the least severe felony (class 5) is "one to two years plus one year of parole," Colo.Rev.Stat. § 18–1–105 (1982 Pocket Part), I am convinced that the "felony" language was added to the wiretapping statute in 1972 as a short hand method to ensure compliance with the federal statute's requirement that a designated offense be punishable by imprisonment for

more than one year. That is, the Colorado General Assembly merely intended to conform to the requirements of the federal statute. This conclusion is supported by the Colorado Supreme Court, which has emphasized that the Colorado statute is intended to correspond closely to the federal wiretapping statute. *People v. Martin,* 176 Colo. 322, 490 P.2d 924, 929 (1971) ("the virtually identical Colorado statute"); *People v. Milnes,* 186 Colo. 409, 527 P.2d 1163, 1165, n. 1 (1974) ("our Act is patterned after the federal law"). Thus, admitting the evidence from the wiretap authorized by Judge Kelly, even on the sole basis of McNulty's prior misdemeanor conviction, is fully consistent with the Colorado legislature's intent.

Judge Seymour has also apparently concluded that the fact that the parties and the court below overlooked defendant Valley's prior felony gambling conviction somehow negates its existence. However, the neglect of the parties and the court below cannot detract from the conclusion that a state judge, familiar with state law, could (and indeed undoubtedly would) reasonably determine from the entry in the affidavit that Valley had a prior felony professional gambling conviction. Moreover, we cannot infer that Judge Kelly overlooked this important fact in the affidavit just because the parties and the court below did. It was manifestly in the defendants' interest to overlook it, and the government attorney and federal court may not be as familiar with state law as Judge Kelly, a state judge, is. Undoubtedly familiar with both the state wiretapping statute and the state gambling statutes, and knowing that a repeating gambling offender was necessary for the crimes under investigation to be punishable as felonies, he would have looked for—and found—the prior professional gambling convictions of not only Guy McNulty but also Dennis Valley.

"Our role on review of the sufficiency of a wiretap application is a limited one; it is 'not to make a *de novo* determination of sufficiency ... but to decide if the facts set forth in the application were minimally adequate to support the determination that was made.'" *United States v. Gerardi*, 586 F.2d 896, 897 (1st Cir.1978), *quoting United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 55 L.Ed.2d 278 (1977). Proceeding under this principle, I must conclude that the affidavit sets forth sufficient facts to support a determination that Dennis Valley was a repeating gambling offender and thus the wiretap order was for a designated offense "for which a felony penalty is authorized."

It is not inappropriate, as Judge Seymour apparently contends, for this court to consider *all* the facts in the record, whether pointed out by the parties or not, in making our determination of this case. This opinion has not raised, *sua sponte*, a new issue before the court. The issue remains whether the wiretap order issued by Judge Kelly fully complied with the Colorado wiretapping statute. This opinion merely applies the facts before us in the record to determine that issue in accordance with the law. Judge Seymour has cited no authority in support of her contention that it is inappropriate for us to do so.

Accordingly, I conclude that the state wiretap order at issue in this case complied fully with the state wiretapping statute, and hence evidence from that wiretap is admissible in the proceedings below. Therefore, I concur in the result reached by Judge Doyle that the judgment of the trial court suppressing the evidence be reversed.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

WILLIAM E. DOYLE, Circuit Judge, concurring.

We are here called upon to determine whether evidence obtained as a result of a state-authorized wiretap must be suppressed, even though the surrounding circumstances were in accord with the federal law and even though it may have been obtained without satisfying all of the requirements of the state law.

## THE EVIDENCE

There are six defendants in the case. They are Guy Mickey McNulty, George O'Brien, Theodore Tulper, Donald Staadts, James Nestoff, and Dennis Valley. The Colorado State Organized Crime Task Force commenced the investigation as part of its mission of investigating professional gambling. McNulty was watched closely for much of October and November of 1980. He had made frequent use of a friend's apartment on Kepner Place in Aurora, Colorado. It was suspected that he and the others were using a telephone in that apartment to conduct bookmaking transactions. Police were unable, however, to obtain sufficient evidence to document

this. Hence the necessity for a wiretap arose. An application in state district court was made by the district attorney, Robert Gallagher, Jr., for permission to place a wiretap on the telephone in the Kepner Place apartment. This was pursuant to Colo.Rev.Stat. § 16–15–102 (1973 Comp.). Included in the application was a lengthy affidavit from the police detective in charge of the investigation. It recited possible violations of both state and federal gambling laws. Judge Kelly authorized a thirty-day wiretap on November 21, 1980.

Subsequently, the results of the wiretap were furnished to federal authorities. Following the issuance of the federal indictment several of the six defendants moved to suppress the wiretap evidence for the reason that the application failed to charge a felony offense and hence was invalid under state law. Thus state law is drawn directly into the question. The Colorado statute provides that an ex parte order authorizing wiretaps may be issued if there is probable cause to believe that evidence will be obtained of the commission of any of several enumerated crimes. These include gambling, "meaning professional gambling as defined in § 18–10–102(8), C.R. S.1973 and subject to prosecution under § 18–10–103(2), C.R.S.1973." Colo.Rev. Stat. § 16–15–102(1)(a)(III) (1973 Comp.). That statutory language does not offer guidance as to whether only serious gambling offenses can trigger wiretap orders; Colo.Rev.Stat. § 18–10–102(8) (1973 Comp.) simply defines "professional gambling" while Colo.Rev.Stat. § 18–10–103(2) (1973 Comp.) merely asserts that professional gambling can be either a misdemeanor or a felony depending on whether the perpetrator is a "repeating gambling offender."

Section 16–15–102 also provides, however, that "anything to the contrary notwithstanding, an ex parte order for wiretapping or eavesdropping may be issued only for a crime specified in this subsection (1) for which a felony penalty is authorized upon conviction." Colo.Rev.Stat. § 16–15–102(1)(b) (1973 Comp.). Thus, a wiretap order is presumably invalid unless the offenses which there is probable cause to believe have been committed constitute a felony.

Professional gambling is to be regarded as a felony only if the perpetrator is a "repeating gambling offender" who is defined as

> Any person who is convicted of ... [professional gambling, or certain other offenses] within five years after a previous misdemeanor conviction under [the same statutory] sections ... or at any time after a previous felony conviction under any of the mentioned sections."

Colo.Rev.Stat. § 18–10–102(9) (1973 Comp.).

The defendants here involved had no previous felony convictions. McNulty alone had a recent misdemeanor conviction; he had pleaded guilty to a professional gambling charge on December 13, 1979. Thus only McNulty could be subject to possible felony penalties if convicted of the offense being investigated with the aid of the wiretap and then *only* if the hypothetical second conviction occurred within five years of the previous conviction.

In their motions to suppress, McNulty and the others argued that the ultimate occurrence of the conviction-within-five-years contingency was too uncertain to be a basis for the wiretap order. Various events could conceivably delay the onset of a trial indefinitely, and failure to convict McNulty within five years of the previous conviction would render the wiretap order void *ab initio*. Because the state judge could not conclude with certainty that the offense being investigated was one for which a felony penalty is authorized upon conviction, the defendants contended that the wiretap order was invalid.

The trial court granted the motion to suppress. It noted that the Colorado wiretap statute reflects the intent that only felony offenses be subject to investigation using wiretaps. In addition, the court observed that the definition of "repeating gambling offender" in the Colorado gambling statute emphasizes the date of the offender's second conviction rather than the date of the second offense, unlike other

laws such as the habitual offender statute. The Colorado state legislature obviously intended to focus on the date of conviction, especially, it would appear, when read in the context of the wiretapping statute's felony requirement. Given the ambiguity of the reasons for that legislative choice, the rule that ambiguity in criminal statutes must be resolved in favor of the defendant then comes into play. The state judge could not have known, regardless of probabilities, that the second conviction would occur within five years of the first. The court therefore concluded that the wiretap order was invalid.

Subsequently, the government brought an interlocutory appeal to this court. We now address the preliminary issue of whether state law really does apply to this kind of situation. We conclude that it does not, and that the situation is governed by federal law.

Unlike the Colorado statute, the federal wiretapping statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.,* authorizes wiretaps for investigating, *inter alia,* suspected violations of state or federal gambling statutes without requiring that they be felonies.[1]

We conclude that federal law governs the admissibility of the wiretap evidence in this case. The result is circumvention of the state law problems associated with using a wiretap to investigate a possibly non-felonious offense.[2] It would appear that the amended Colorado statute is perhaps unique in requiring the investigated offense to be a felony. *See United States v. Curreri,* 388 F.Supp. 607, 614 (D.Md.1974); *United States v. Lanza,* 341 F.Supp. 405,

411–13 (M.D.Fla.1972); *State v. Kolosseus,* 253 N.W.2d 157, 160–61, 198 Neb. 404 (1977); *State v. Aurilio,* 366 So.2d 71, 76–77 (Fla.App.1978); *People v. Nicoletti,* 375 N.Y.S.2d 720, 726–28, 84 Misc.2d 385 (Cr. Ct.1975). *See generally,* New York Eavesdropping Warrants Law § 700.05, *et seq.,* (McKinney); Conn.Gen.Stat., Ch. 959a, § 54–41a, *et seq.;* Fla.Stat., Tit. 45, § 934.-05 *et seq.;* Del.Code Ann.Tit. 11, § 1336, *et seq.* One possible explanation is that the Colorado case of *People v. Martin,* 490 P.2d 924, 176 Colo. 322 (1971) said that Title III required states to limit wiretapping to serious crimes. 490 P.2d at 932. The felony clause was added to the Colorado statute shortly after the decision in *Martin.* Chapter 45, § 1, House Bill No. 1012, Criminal Proceedings: Wiretapping and Eavesdropping, 1972 Sess.Laws of Colo. at 269–70. Thus the Colorado statute may well have incorporated the anomalous felony investigation requirement solely because the Colorado Supreme Court stated in dictum a view of the federal statute that most other courts have since rejected. Be that as it may, the view we take eliminates the necessity for applying the Colorado statute.

On its face this case should be governed by federal law inasmuch as the cause is being tried in federal court and is a criminal charge which arises under federal statutes. But we can only finally determine this by careful consideration of the authorities. *See* Comment, Constitutional Law—Search and Seizure—Federal Courts Are Bound by Federal Wiretapping Statutes and Will Not Exclude Evidence Seized by State Agents in Violation of More Restric-

---

**1.** *See* 18 U.S.C. § 2516(1)(c), § 2516(2); *United States v. Frederickson,* 581 F.2d 711, 714–15 (8th Cir.1978); *United States v. Carubia,* 377 F.Supp. 1099, 1104–05 (E.D.N.Y.1974); *United States v. Curreri,* 388 F.Supp. 607, 614 (D.Md.1974); *State v. Kolosseus,* 253 N.W.2d 157, 160–61, 198 Neb. 404 (1977); *State v. Aurilio,* 366 So.2d 71, 76–77 (Fla.App.1978); *People v. Nicoletti,* 375 N.Y.S.2d 720, 726–28, 84 Misc.2d 385 (Crim.Ct.1975). *But see United States v. Tortorello,* 342 F.Supp. 1029, 1035 (S.D.N.Y.1972), aff'd 480 F.2d 764 (2d Cir. 1973), (dicta); *United States v. Lanza,* 341 F.Supp. 405, 413 (M.D.Fla.1972) (dicta); *People*

*v. Amsden,* 368 N.Y.S.2d 433, 436–37, 82 Misc.2d 91 (S.Ct.1975).

**2.** It is surprising that the difference between the Colorado and Federal law developed. The Colorado General Assembly apparently intended to follow Title III. The adoption of the felony requirement would appear to have resulted from the decision of the Colorado Supreme Court in *People v. Martin,* 490 P.2d 924, 932, 176 Colo. 322 (1971).

tive State Laws, 30 Vand.L.Rev. 98, 103, 108 (1977).

## IS EVIDENCE OBTAINED IN POSSIBLE VIOLATION OF STATE LAW BUT IN COMPLIANCE WITH FEDERAL STANDARDS ADMISSIBLE IN FEDERAL PROSECUTIONS?

Under federal law governing searches and seizures, the constitutionality of admitting into federal proceedings evidence obtained in violation of state law is well established. It matters not whether state officers participated in the seizure. *See United States v. Dudek,* 530 F.2d 684, 690 (6th Cir.1976). It is, of course, necessary that no applicable federal standard was violated by the conduct of the officers. Assuming that constraint is satisfied, seized evidence—including wiretap evidence—is conditionally admissible in federal court subject, of course, to normal evidentiary provisions. *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 882, 11 L.Ed.2d 777 (1964); *Rios v. United States,* 364 U.S. 253, 255, 80 S.Ct. 1431, 1433 (1960); *Elkins v. United States,* 364 U.S. 206, 223–24, 80 S.Ct. 1437 (1960); *On Lee v. United States,* 343 U.S. 747, 754–55, 72 L.Ed. —— (1952);[3] *Olmstead v. United States,* 277 U.S. 438, 469, 48 S.Ct. 564, 569, 72 L.Ed. 944 (1928); *United States v. Armocida,* 515 F.2d 49, 52 (3rd Cir.1975).

We do not say that federal courts need never construe or apply state law. Where the circumstances dictate the propriety of applying state law, it will be recognized. An example of this is *United States v. Dudek,* 530 F.2d at 690. The failure of Ohio police officers to file a timely report and a verified inventory was held (in *Dudek*) to not require vitiation of an otherwise validly executed search warrant issued under Ohio law.[4] A dearth of federal law on the issue in question is one such constraint.

*United States v. Di Re,* 332 U.S. 581, 589–91, 68 S.Ct. 222, 226–27, 92 L.Ed. 210 (1948). In that case, the Court ruled that state law governed the propriety of seizure of evidence of a federal crime by a state officer working with a federal officer, because there was insufficient federal law on the question of warrantless arrests. More to the point here, a relevant federal statute may prescribe reference to state law in certain instances. Cf. Fed.R.Evid. 501 (privilege in certain actions to be determined in accordance with state law). Thus a careful examination of Title III, the federal wiretap statute, is necessary here.

## IS TITLE III AMBIGUOUS SO THAT FEDERAL CASE LAW MUST BE CONSIDERED IN APPLYING IT?

Before examining Title III more closely, we consider it helpful to scrutinize cases dealing with the issue. Numerous opinions have addressed the general question of the admissibility in federal trials of wiretap evidence obtained in violation of more restrictive state laws. Though some few have found state law to be applicable, the large number have concluded that federal law alone governs the admissibility question. The cases also support the conclusion that Title III is ambiguous on the question of whether state law is to be applied by federal courts. Some few decisions find reasons for applying state law. But the large number contain language supporting the opposite result. We conclude that Title III is ambiguous on the question, and does not direct reference to state law.

First, cases establish that more restrictive state laws have no effect in determining the admissibility of wiretap evidence obtained by federal agents in compliance with federal standards but in possible violation of more restrictive state laws. *See,*

---

**3.** On Lee involved the admissibility of evidence obtained by use of a radio transmitter. This was received notwithstanding that it was not specifically authorized and notwithstanding that the person instigating the admissions was posing as a friend of On Lee. The Court held that the evidence was admissible because no fourth amendment or federal statutory violation was evident.

**4.** The enactment of a federal wiretap statute in 1968 results in this inquiry being more than rejection of a state law. It is necessary to apply the federal law.

*e.g., United States v. Keen,* 508 F.2d 986, 989 (9th Cir.1974); *United States v. Testa,* 548 F.2d 847, 855–56 (9th Cir.1977); *United States v. Infelice,* 506 F.2d 1358, 1365 (7th Cir.1974); *United States v. Votteller,* 544 F.2d 1355, 1361 (6th Cir.1976); *United States v. Hodge,* 539 F.2d 898, 905–06 (6th Cir.1976); *United States v. Armocida, supra,* 575 F.2d at 52; *United States v. Upton,* 502 F.Supp. 1193, 1199 (D.N.H.1980); *United States v. Beni,* 397 F.Supp. 1086, 1088 (E.D.Wis.1975); *United States v. Smith,* 405 F.Supp. 144, 146–7 (E.D.Pa. 1975).

Even where the wiretap evidence was obtained by means of a cooperative effort between state and federal agents, possible violations of more restrictive state laws are disregarded. *See, e.g., United States v. Hall,* 536 F.2d 313, 327 (10th Cir.1976) *; *United States v. Daniel,* 667 F.2d 783, 784–5 (9th Cir.1982); *United States v. Shaffer,* 520 F.2d 1369, 1372 (3rd Cir.1975).

Indeed, even where the wiretap evidence is obtained exclusively by state agents—apparently the case here—it is generally held that more restrictive state laws are not applicable and that federal law govern admissibility in a federal court. A few courts have ruled that federal standards are to be supplemented by more restrictive state law provisions in determining the admissibility of wiretap evidence in such cases. *See, e.g., United States v. Atkins,* 618 F.2d 366, 371 (5th Cir.1980) [5]; *United States v. Hinton,* 543 F.2d 1002, 1011 (2nd Cir.1976) [6]; *United States v. Marion,* 535 F.2d 697, 702 (2nd Cir.1976) [7]; *United States v.*

*Manfredi,* 488 F.2d 588, 598 and n. 7 (2nd Cir.1973); *United States v. Lanza,* 341 F.Supp. 405, 411–12 (M.D.Fla.1972). But most of those cases applied to state law without carefully examining whether Title III required it. *See, e.g., Atkins, supra* and *Lanza, supra.* Others, like the oft-quoted *Manfredi* and *Marion* opinions, cited little or no authority for deferring to state law, and have been subsequently, limited. *See United States v. Sotomayor,* 592 F.2d 1219, 1225–26 and n. 13 (2nd Cir.1979).

As suggested above, the prevailing trend in evaluating wiretap evidence resulting from activity of state officers is to hold admissible that evidence which has been obtained in accordance with federal law and the United States Constitution even though it may not have been obtained in full compliance with state law. *See, e.g., United States v. Hall,* 543 F.2d 1229, 1234–35 (9th Cir.1976). The same result was reached in *United States v. Neville,* 516 F.2d 1302, 1309 (8th Cir.1975). *See also United States v. Sotomayor, supra,* 592 F.2d at 1222–27 wherein it was held that wiretap tape recordings which were solely a product of state action but were not sealed in compliance with state law, were nonetheless admissible in a federal criminal proceeding. *Accord, United States v. Vazquez,* 605 F.2d 1269, 1275–76 (2nd Cir. 1979) (federal law governed on the issue of sealing the tapes notwithstanding that the wiretap had been conducted under state law). *See also, United States v. Horton,* 601 F.2d 319, 323 (7th Cir.1979); *United States v. Nelligan,* 573 F.2d 251, 253 (5th Cir.1978); *United States v. Shaffer,* 520

---

* In this court's decision in *United States v. Hall, supra,* it was recognized that:

> In general, the admissibility of evidence in federal criminal cases is governed by federal law.

See *United States v. Armocida,* 515 F.2d 49 (3rd Cir.1975); *Ansley v. Stynchcombe,* 480 F.2d 437 (5th Cir.1973); *United States v. Teller,* 412 F.2d 374 (7th Cir.1969).

**5.** The court in Atkins followed the state standard without considering any state/federal conflict.

**6.** The Hinton court stated that the state law was primary but added "The equivalent federal statutes (18 U.S.C. § 2510) and relevant federal

decisional law may, however, be considered where there is inadquate case law on a particular point."

**7.** The Marion court actually applied federal law and opined that evidence would not be admissible if the proffered standard was less stringent than those required by Title III. The court added that if the state had more exacting procedures there would have to be compliance with "that test as well." The court went on to hold that the New York eavesdropping decision was not controlling.

F.2d 1369, 1372 (3rd Cir.1975); *United States v. Pine*, 473 F.Supp. 349, 357 (D.Md. 1978); *United States v. Curreri*, 388 F.Supp. 607, 614–18 (D.Md.1974). *Cf. United States v. Cella*, 568 F.2d 1266, 1279 (9th Cir.1977); *United States v. Bedford*, 519 F.2d 650, 653–54 (3rd Cir.1975) (validity of search warrant); *United States v. Melancon*, 462 F.2d 82, 92 (5th Cir.1972) (same); *United States v. Sims*, 450 F.2d 261, 262–63 (4th Cir.1971) (same).

Two of those cases are particularly instructive. In *United States v. Hall, supra*, the Ninth Circuit held that a California law prohibiting the use of wiretap evidence would not bar the admission in federal court of heroin seized by state police resulting from information provided by the wiretap. When a federal wiretap produced information about transporting heroin, state officers were notified and they made a warrantless search of the defendant and seized the heroin. The Ninth Circuit refused to apply the California provision forbidding the use of wiretap information by police. The Court said that Title III "requires the exclusion of wiretap evidence from any court proceeding if its disclosure would violate the federal act; no mention is made of any state law." 543 F.2d at 1232. The court acknowledged that the federal act did not preclude states from enacting more restrictive statutes of their own, but also said that "[aside from] the lone exception concerning interception by state officers for state prosecutions, the federal statute does not defer to the states." In *United States v. Sotomayor, supra*, the evidence was obtained through a state authorized wiretap. It was held admissible despite the state officer's violation of a New York tape sealing requirement, because the sealing of the tapes satisfied federal standards. In assessing the intent of Congress with respect to Title III's impact on more restrictive state standards, the Second Circuit dismissed as inconclusive some language from Title III's legislative history that other cases, such as *United States v. Marion, supra*, had construed to require deference to state law. Of that language, the *Sotomayor* court said: "We

do not construe the emphasized language as evidence of Congressional intent to preclude admissibility of such testimony in a federal court where higher standards imposed by a state statute are not met." 592 F.2d at 1225 n. 11. The *Sotomayor* court suggested that application of state law might be called for in rare instances, but that dicta was primarily based on Second Circuit precedent and policy grounds rather than on any pretense that Title III provided a definite mandate.

### WHETHER TITLE III GIVES ANY GUIDANCE ON THIS QUESTION.

From the cases we conclude that Title III offers little specific guidance on the question of applicability of state law. There is no language in either the statute or in the legislative history from which it could be inferred that state standards should govern in cases like that before us. Efforts to read into Title III the obligation to defer to state law, such as that set forth in Judge Koelsch's dissent in *United States v. Hall, supra*, is unsatisfactory in that it merely relies on legislative history speaking generally of the rights of the states to enact stricter wiretap-related laws. *See, e.g.,* S.Rep. 1097, 90th Cong.2d Sess., *reprinted* in [1968] 2 U.S.Code Cong. & Ad.News 2112, 2181 regarding 18 U.S.C. § 2511. The fact that the Congress did not expressly deal with this issue is not the least bit surprising because the legislators undoubtedly could not predict what the more desirable policy was without knowing what conditions would exist in particular cases. Congress was agreeable to allowing the states to enact measures that were more strict than the federal law, but was not agreeable to allowing more restrictive state laws to govern federal prosecutions. There was no effort nor intent to preempt state law. S.Rep. 1097, *supra*, at 2187. It was expressly stated that "the revision envisioned that states should be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation." *Id.* But no language from the legislative history actually directs that state

law should govern admissibility in a federal proceeding. Rather, the legislative history merely asserts that despite the generally preemptive character of the statute, state law may continue to govern in state proceedings and in traditional areas of state concern such as privilege. *See United States v. Hall, supra,* 543 F.2d at 1232. Likewise, there is no comfort to be found in the language of Title III itself. The opinions that have attempted to find support in Title III for either viewpoint have depended on interpretations: *United States v. Hall, supra,* 543 F.2d at 1232–33 (18 U.S.C. § 2520, which provides that "good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law." It establishes that Congress intended federal law to prevail in case of conflict); *United States v. Curreri, supra,* 388 F.Supp. at 615–17. (Title III allows federal courts to disregard more restrictive state provisions dealing with disclosure or use of wiretap evidence, though it may require deference to interception provisions; Title III treats the authorization for interception in a different section, 18 U.S.C. § 2516, from that dealing with disclosure and use, 18 U.S.C. § 2517; the language in § 2516 to the effect that a "state judge may grant in conformity with section 2518 of this chapter and with the applicable state statute an order authorizing, or approving the interception of wire or oral communications ..." which may require deference to some more restrictive state provisions, does not refer to disclosure or use); *United States v. Pine, supra,* 473 F.Supp. at 357 (Title III incorporates stricter state law to control the application, authorization and execution of a state order, but does not rely on external standards for admissibility; under 18 U.S.C. § 2516(2) intercepted communications obtained by state officials under the authorization of a state judge are lawful if they satisfy the stricter of state or federal procedures for "obtention" (sic) and are admissible in federal courts if "lawful.")

## WHAT IS THE RATIONALE FOR THE DECISION LAW?

First it must be admitted that virtually all of the cases hold that federal law governs the admissibility of this evidence. And, it is also plain that the issue, although it has constitutional aspects, is ultimately an evidentiary one in most instances, as opposed to a standard which is designed to protect individual's privacy rights. *See,* for example, *United States v. Sotomayor, supra,* 592 F.2d at 1225–26; *United States v. Vazquez, supra,* 605 F.2d at 1275–76. However *United States v. Hall, supra,* 543 F.2d at 1232 does not make any such distinction.

We have been unable to find any case which clearly holds to the contrary. The decision of the Second Circuit in *United States v. Manfredi,* 488 F.2d at 598 n. 7, although it applies state law is not authoritative. In that case, however, the application was for the warrant which was filed in the state court, this was a joint federal/state investigation, contained an agreement to limit the seizure of conversations to those specifically pertaining to the aforementioned penal law violation. In other words that was a state law. But it was in that context that the Second Circuit held that even the warrants themselves were clearly a question of state law. However, the circumstances were special and surely did not dictate that the Second Circuit even will consistently turn to state law in circumstances such as are present here. Indeed, there are other Second Circuit decisions which do not follow this.

The subsequent case of *United States v. Sotomayor, supra,* 592 F.2d at 1215, 1225 (2nd Cir.1979), although it nodded in the direction of *Manfredi,* did not follow it. The court in *Sotomayor* stated "we agree that under New York law, as interpreted by the New York Court of Appeals, the tapes could not be received in evidence in a New York state court." The Second Circuit continued "However, we do not consider Manfredi and its progeny to obligate us automatically to apply to a federal proceeding all provisions of a state wiretap

statute containing more stringent requirements than those prescribed by Title III." The court further said that *Manfredi*'s only mandate was to protect an individual's right of privacy as distinguished from procedural rules essentially evidentiary in character. Reference was made to Title III of the Omnibus Crime Control and Safe Streets Act. 18 U.S.C. § 2515, *et seq.*

From a reading of the cases, it is clear that the underlying rationale is the reluctance of federal courts, when trying a criminal case arising under federal criminal law, to apply state standards to the prosecution before it. In other words criminal trials are to be governed by federal procedural law and there is no right enjoyed by the defendant to impose a state standard on the federal court. Reasons for this include both the elements of positiveness and clarity necessary to the just administration of federal law and a reluctance to allow a defendant charged with a federal criminal offense to have an option as to which body of law shall apply. To allow an option to be exercised by the accused introduces an expedient element which the federal courts have shied away from. Even in a situation in which the state officers have obtained all of the evidence prior to the filing of the case in federal court, the evidence is received in federal court without reference to any state law on the subject. *See United States v. Hall, supra,* at 1235, where it was said that it was not a violation of the fourth amendment and the participation of the state officers did not make it so. The evidence in *United States v. Sotomayor, supra,* 592 F.2d at 1223, was obtained under a state rather than a federal wiretap order. It was said the focus of concern was disclosure or use of already obtained wiretap evidence, rather than the validity of the original authorization for intercepting communications.

Though the instant case may involve the validity of the original interception, the result here should be the same as in *Sotomayor:* apply federal law. This is unlike ordinary state/federal relations which is encountered with respect to jurisdictional questions and whose framework is found in

the abstention rules, nor is it comparable to the relationship between state and federal law which has developed as the result of the *Erie Railroad v. Tompkins* body of law.

As a further consideration in the discussion of the ill foundedness of the argument that state law should govern federal prosecutions, it should be added that states can claim no legitimate interest in restricting the admissibility of evidence in federal courts; admissibility issues are at the very heart of concerns appropriately regulated by the laws of the particular forum. *See Sotomayor, supra,* 592 F.2d at 1225. There have been suggestions in some of the cases, including *Sotomayor* and *Curreri,* that the refusal to employ a stricter state standard may have the effect of impairing legitimate state privacy interests. We fail to see how applying more restrictive state provisions in federal court would protect any such interests or have any effect on them at all. The wiretap evidence acceptable under federal standards will continue to be used under federal law regardless of state standards. *United States v. Shaffer, supra,* 520 F.2d at 1372.

Policy arguments rooted in deterrence and maintaining judicial integrity, the objectives which are said to be served by the exclusionary rule, have little validity here. A federal suppression rule would deter few state officers from violating state law because state officers have little interest in a prosecution that has been taken over by federal officials. *See United States v. Janis, supra,* 428 U.S. 433 at 457–58, 96 S.Ct. 3021, 3033–34, 49 L.Ed.2d 1046 (1976).

On the subject of deterrents, it is to be noted that unlike the "silver platter" cases, controversies like the present one do not raise the concerns of fraud or subterfuge. In the "silver platter" cases there was an unholy alliance between federal and state prosecutors; the object was to introduce evidence that had been seized by state officers in violation of federal constitutional law by avoiding the appearance of any federal involvement in the seizure. It cre-

ated an incentive for federal officers to solicit state officers to seize evidence under the pretense of working independently of federal authority. But here neither state nor federal agents have anything to gain by acting as they did. That underlines the irrelevance of subterfuge and fraud and emphasizes the infrequency with which similar cases will surface.

Finally, with respect to both deterrence and judicial integrity, it is significant that good faith attended this investigation. There is no sign whatsoever of bad faith. Deterrents have no place where this is the case. Persons acting in good faith do not weigh possible sanctions. They believe themselves to be acting as they are supposed to act. Similarly, judicial integrity is not offended by the admission of evidence obtained through good faith conduct. *See United States v. Peltier*, 422 U.S. 531, 537, 95 S.Ct. 2313, 2317, 45 L.Ed.2d 374 (1975).

## THE ADMISSIBILITY OF THE WIRETAP EVIDENCE UNDER FEDERAL STANDARDS

Our conclusion is therefore that federal law governs the admissibility of the wiretap evidence referred to above.

Having resolved that issue, we now turn to the validity of the wiretap and the consequent admissibility of the evidence under federal standards.

The wiretap application submitted by the United States Attorney included an affidavit containing specifics. That affidavit named eight individuals, including several of the defendants, and alleged that they were suspected of violating the Colorado gambling statute and the Colorado criminal conspiracy statute, "together with violations of certain laws of the United States of America concerning unlawful gambling activity." Judge Kelly in authorizing the wiretap found that probable cause had been shown as to the suspected violations of state law. He did not mention any federal violations.

Title III authorizes a state judge to approve a wiretap if it may provide evidence of certain enumerated offenses, including gambling. 18 U.S.C. § 2516(2). Title III authorizes the issuance of a federal order if a violation of 18 U.S.C. § 1955, prohibiting illegal gambling business, is apparent. 18 U.S.C. § 2516(1)(c). As we previously noted the majority of courts have ruled that suspected gambling violations need not be felonies in order for a wiretap to issue pursuant to Title III.

Under the Title III standards, the wiretap in this case was proper with respect to offenses to be investigated. In accordance with the provision directed to state authorizations, the state court found in effect that the "interception may provide ... evidence of the commission of the offense of ... gambling." 18 U.S.C. § 2516(2). Even if the state court's order was not granted "in [complete] conformity ... with the applicable state statute," as defendants argue, the latter additional statutory language logically applies only when admissibility in a state proceeding is the issue. The Colorado wiretap statute is simply not applicable in the present context. The minimal federal standards that should govern federal admissibility decisions are limited to the independent requirements that are stated in § 2516(2); there is no reference to state law. Otherwise the established rule that states can authorize wiretaps pursuant to Title III, even if they have enacted only "enabling" statutes without restrictions, *United States v. Curreri*, 388 F.Supp. 607, 612–13 (D.Md.1974) (federal statute supplies missing elements, including necessary restrictive standards, in state statutes; "Title III does not require that Maryland adopt a statute tracking its provisions in order to validate evidentiary use of state court authorized wiretaps otherwise obtained in compliance with the substantive provisions of Title III") would not be wise. Separate state standards, where they exist, appropriately govern validity in state proceedings. But only the minimal federal standards, which themselves become the state standards in states with only wiretap "enabling" laws, govern validity for purposes of admissibility in federal proceedings. To "apply federal law" here means

to ensure compliance with Title ·III's across-the-board minimal requirements for all state interception orders, not to look further to state laws that may govern state admissibility decisions in some instances.

Likewise, the wiretap order was proper under the provision directed to federal authorizations. The application told the state judge that certain federal gambling violations were suspected, though it did not expressly refer to the federal gambling statute, 18 U.S.C. § 1955. Also the elements of a § 1955 offense were substantiated by the application. The most important element of a § 1955 offense is simply "a violation of the law of a state or political subdivision in which it is conducted," 18 U.S.C. § 1955(b)(1)(i)—surely an element supported by probable cause here. In addition the application provided convincing evidence that five or more persons might be involved, another element required by the federal statute. 18 U.S.C. § 1955(b)(1)(ii). Likewise, it appears that the alleged gambling business under investigation had been "in substantially continuous operation for a period in excess of thirty days," or had collected "a gross revenue of $2000 in any single day." 18 U.S.C. § 1955(b)(1)(iii). Hence the state judge could readily have found that there was probable cause to suspect a § 1955 violation, though he chose not to do so. The existence of such a showing of a likely violation of federal law reinforces the conclusion that under federal law the issuance of the state order was appropriate. *See United States v. Lanza,* 341 F.Supp. 405, 412–13 (M.D.Fla.1972) (where evidence indicated that federal intercept order could have issued because of § 1955 violation, state order could also have issued; nothing in § 1955 or its legislative history suggests that Congress intended the states' authority to investigate gambling offenses to be more restricted than that of the federal government; the court could assume that state legislature did not intend to limit the scope of wiretap orders issued under state authority to investigating violations of the state gambling statute.)

Thus the offenses named in the wiretap application were, under federal standards, proper subjects of investigation with the aid of a wiretap authorized by a state court.

## PROBABLE CAUSE

Several of the defendants submitted motions to the trial court contending that the wiretap order was unsupported by probable cause. The trial court eventually concluded, however, that probable cause had been shown. We see no reason to disturb that determination. The defendants have not raised the issue here, and in any event the affidavit submitted with the wiretap application provides ample evidence showing probable cause.

The defendants raised other challenges to the admissibility of the wiretap evidence, including contentions that the state officials had failed to exhaust normal investigative procedures prior to applying for a wiretap order, and that the intrusion incident to the use of the wiretap was not properly minimized by the investigators. We have not considered these points because the trial court did not rule on them.

I join with Judge Anderson in the judgment of reversal and also in the mandate to proceed further.

## APPENDIX

In her dissent Judge Seymour takes the position that where the state court is used for the purpose of issuing a wiretapping warrant, that state law is applicable to the proceedings at the trial even though the trial was in federal court. Judge Seymour's reliance is on the language of 18 U.S.C. § 2516(2) which deals with the principal prosecuting attorney of a state being authorized to obtain such a warrant. Judge Seymour points to the language of the statute, § 2518 of 18 U.S.C. Her position is that the state wiretap proceeding must satisfy both the federal statute and that of the state. The judge in her dissent immediately reaches the conclusion that the state court can grant the wiretap order only if it complies with the federal statute

and at the same time is in accord with the applicable state statute. She further concludes that the state law is the applicable law at the trial in federal court. We, of course, do not agree with this position. Our disagreement is based upon a very large body of case law from several circuits, including the Second Circuit. The early cases in the Second Circuit do support her position. However, there has been a tendency in the later cases, as we have heretofore shown, to follow the rule which we have adopted here, namely that federal law applies in federal prosecution in federal court.

It is of some interest to note that the Senate Judiciary Committee Report No. 1097 having to do with the Omnibus Crime Control and Safe Streets Act of 1968, shows that the purpose of Congress in adopting Sec. 2516 of 18 U.S.C. was not with whether the state law governs a trial in federal court. The part of the Report which is applicable here is that which explains the purpose of § 2516 of the Safe Streets Act. It is the comment of the Senate Committee at page 2187 of U.S. Code Cong. and Admin.News 1968, Vol. II. The language which is of interest is:

> No applications may be authorized unless a specific State statute permits it. The State statute must meet the minimum standards reflected as a whole in the proposed chapter. The proposed provision envisions that States would be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation. State legislation enacted in conformity with this chapter should specifically designate the principal prosecuting attorneys empowered to authorize interceptions. The State judge of competent jurisdiction, as defined in section 2510(9), empowered by the State legislation to grant orders for interceptions would have to make the findings which would be the substantial equivalent to those required by section 2518(3), ... and the authorization itself would have to be made in substantial conformity

with the standards set out in section 2518. The interception of wire or oral communications by State law-enforcement officers could only be authorized when it might provide, or has provided evidence of designated offenses. (*See McNally v. Hill,* 293 U.S. 131, 136, 55 S.Ct. 24, 26, [79 L.Ed. 238] (1934).) Specifically designated offenses include murder, kidnaping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana, or other dangerous drugs.

There is in this case a state statute authorizing the proceedings. The conclusion from a reading of the Senate Report is that Section 2516(2) was not designed for the purpose which Judge Seymour maintains, that is that the state law must be complied with. Instead it was defining the conditions under which the hearing in state court would be conducted and in that relationship it states that the state statute must not have minimum standards less than the standards required in the federal law. That is satisfied. We call attention to this because it shows that this provision relied on by Judge Seymour does not seek to make state law applicable. Its whole concern is with the procedures that attend the obtaining of the warrant in state court.

SEYMOUR, Circuit Judge, dissenting.

## I.

## APPLICABLE LAW

I am unable to concur in either of the other opinions in this case. Although I agree that federal law governs treatment of evidence obtained pursuant to state authorized and conducted wiretaps, I do not believe that infractions of state wiretap order regulations are irrelevant to federal admissibility inquiries. After reviewing the federal wiretap statute and the cases, I have concluded that the federal statute incorporates state standards and generally bars federal court use of wiretap evidence

procured by state officers in contravention of state wiretap order requirements.[1]

My disagreement with Judge Doyle's analysis stems primarily from the language of the federal statute authorizing state wiretap orders, 18 U.S.C. § 2516(2) (1976). The pertinent portion of that statute reads:

"The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and *such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute* an order authorizing, or approving the interception of wire or oral communications ...."

*Id.* (emphasis added). Thus, the statute permits the state court to grant a wiretap order only if it complies both with the federal statute *and* with the applicable state statute.

The Second Circuit has correctly suggested that *federal law* prohibits introduction of evidence obtained by state agents proceeding under section 2516(2) where state wiretap order requirements are violated. *See, e.g., United States v. Marion,* 535 F.2d 697 (2d Cir.1976). There the court said:

"Here, of course, the two conversations in issue were used in federal proceedings. Thus, despite the fact that the interceptions were made pursuant to a state court authorization, at the very least the other requirements of Title III—including § 2517(5)—must be satisfied. But whether the proceedings be federal or state, interpretation of a state wiretap statute can never be controlling where it might impose requirements less stringent than the controlling standard of Title III. *If a state should set forth procedures more exacting than those of*

*the federal statute, however, the validity of the interceptions and the orders of authorization by which they were made would have to comply with that test as well."*

*Id.* at 702 (footnotes omitted) (emphasis added). *See also United States v. Hinton,* 543 F.2d 1002, 1010–12 (2d Cir.1976), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 767 (1977), 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 783 (1977), 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977); *United States v. Manfredi,* 488 F.2d 588, 597–602 & 598 n. 7 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

The issue in this case is the validity of a state court order. The language quoted above from section 2516(2) together with other portions of the federal wiretap statute compel the conclusion that evidence obtained under an invalid state order is not admissible in federal court. Thus, the statute provides that any aggrieved person in a trial may move to suppress the contents of a wiretap on the grounds that "(i) the communication was *unlawfully intercepted."* 18 U.S.C. § 2518(10)(a) (1976) (emphasis added). Elsewhere the statute provides that "[a]ny person who has received, *by any means authorized by this chapter,* any information concerning a wire or oral communication or evidence derived therefrom *intercepted in accordance with the provisions of this chapter* may disclose the contents of that communication or such derivative evidence while giving testimony under oath. 18 U.S.C. § 2517(3) (1976) (emphasis added). The primary question governing admissibility is whether the information was lawfully intercepted within the meaning of the statute.

Judge Doyle's opinion skips over this issue in favor of concluding that if the evidence could have properly been obtained by federal agents under a federal court order, it is admissible notwithstanding it was ob-

---

**1.** The government never contended that the Colorado statute does not apply. *See* Appellant's Brief at 13.

tained in violation of a state court order. However, the cases relied on for that proposition are distinguishable. None of them involves a situation where the state judge issued an order for a wiretap in violation of the state statute. Primarily the cases fall into two categories. The first involves those where some state procedure *subsequent* to interception was violated, such as requirements for sealing the tapes of the intercepted conversations within a certain time frame. *See United States v. Vazquez,* 605 F.2d 1269, 1274–80 (2d Cir. 1979), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *United States v. Sotomayor,* 592 F.2d 1219, 1222–27 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979). *Sotomayor* clearly sets forth the distinction between the *interception* of information under a state court order, as opposed to state law governing the post-interception *preservation* or use of the information.

"We believe that at most *Manfredi* requires us, in determining whether to admit a wiretap obtained by a state officer acting under a state court order issued pursuant to a state statute, to *apply only those more stringent state statutory requirements or standards that are designed to protect an individual's right of privacy, as distinguished from procedural rules that are essentially evidentiary in character.*

"This distinction between procedures governing *the interception* of wiretap evidence and those governing *the preservation* of such evidence after interception for trial is important. *Since a state's protection of privacy normally reflects principles central to its social and governmental order, our failure to respect its more stringent protection of privacy rights would not only violate principles of federalism, but encourage state and federal law enforcement officials to by-pass state law and to engage in federal forum-shopping of tainted evidence.* On the other hand, rules pertaining to the admissibility of evidence are ordinarily governed by the law of the forum.

"Applying these principles here, it is readily apparent that New York's sealing requirements, although vital to the state statutory scheme, do not impose a standard designed to protect an individual's right of privacy but seek only to assure that, *once a lawful interception has been completed,* the fruits of the seizure will remain intact. *United States v. Lawson,* 545 F.2d 557, 564 (7th Cir.1975). The sealing requirement is a post-interception procedure relating solely to the later preservation of the evidence, *as contrasted to the methods used to obtain it. Since the latter involved the state's interest in protection of privacy, the state's law on the subject was respected in Manfredi, Rizzo and Marion.* However, whatever interest, if any, the state may have in securing federal enforcement of its sealing requirements through application of the exclusionary rule is outweighed by the federal interest in establishing its own standards for the admission of *lawfully obtained wiretaps* into evidence."

*Id.* at 1225–26 (footnotes omitted) (emphasis added). Both *Vazquez* and *Sotomayor* recognize that where the issue involves the validity of a state ordered wiretap, the more stringent state requirements must be respected by federal courts. I agree with this conclusion and with the analysis quoted above from *Sotomayor.*

The other category of distinguishable cases involves *warrantless* wiretaps conducted *with* one participant's *consent. See, e.g., United States v. Horton,* 601 F.2d 319 (7th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *United States v. Nelligan,* 573 F.2d 251 (5th Cir.1978); *United States v. Shaffer,* 520 F.2d 1369 (3d Cir.1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1976); *United States v. Neville,* 516 F.2d 1302, 1309 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975). Section 2511(2)(c) specifically provides that it is not unlawful for a person acting under color of law to conduct a wiretap "where

such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. 2511(2)(c) (1976). A communication is not unlawfully intercepted within the meaning of section 2518(10)(a)(i) where one of the parties to the conversation is acting under color of law or has given prior consent to the interception. We have so held in *United States v. Hall*, 536 F.2d 313, 327 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976). The federal statute specifically permits introduction of consensual recordings and thus controls over conflicting state eavesdropping regulations. Where one party consented and no state court order or warrant was obtained, as in the cited cases, the requirement of 18 U.S.C. § 2516(2), that the applicable state law must be complied with, does not come into play.

There is one other case relied on in Judge Doyle's opinion that does not fit either of these two categories. In *United States v. Hall*, 543 F.2d 1229 (9th Cir.1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977), a properly authorized *federal* wiretap produced information about transportation of heroin. State officials were notified and they made a warrantless search of the defendant and seized the heroin. As Judge Doyle notes, the Ninth Circuit refused to apply the California provision forbidding the use of the fruits of wiretap information by state police. In that case, however, the issue was solely one of admissibility of evidence obtained *subsequent to a validly authorized wiretap*. The court there recognized that state standards would have been applicable had the evidence been obtained by state officers for state prosecution in violation of a state statute:

> "The state law cannot preempt the federal unless the federal act itself sanctions the application of state standards. That is not the case here. Federal officers are authorized to wiretap under § 2516(1), regardless of the provisions of state law; *it is only wiretapping by state officers*

*under § 2516(2) which requires further authorization by state statute.* Section 2515 requires the exclusion of wiretap evidence from any court proceeding if its disclosure would violate the federal act; no mention is made of any state law. The legislative intent that federal law is to prevail in case of conflict is further indicated by § 2520, which provides:

> 'A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter *or under any other law* [Emphasis added.]'

*With the lone exception concerning interception by state officers for state prosecutions, the federal statute does not defer to the states."*

*Id.* at 1232 (emphasis added).

In sum, I am convinced the federal statute itself requires our deference to Colorado law on the question of the validity of the wiretap order obtained in state court under state law.

II.

VALIDITY OF WIRETAP ORDER

This case requires a careful reading of both the Colorado wiretapping statute, Colo.Rev.Stat. § 16–15–102 (1978), and the Colorado gambling statute, Colo.Rev.Stat. §§ 18–10–101 to –108 (1978). The wiretapping statute authorizes a state judge to enter an ex parte order authorizing wiretapping only if the judge determines that "[t]here is probable cause for belief that a person is committing, has committed, or is about to commit a particular offense enumerated in this section." § 16–15–102(4)(a). One of the enumerated crimes is "[g]ambling, meaning professional gambling, as defined in section 18–10–102(3) [sic; should be –102(8) ], C.R.S.1973, and subject to prosecution under section 18–10–103(2), C.R.S.1973." § 16–15–102(1)(a)(III). *"Anything to the contrary notwithstanding,* an ex parte order for wiretapping ... may be issued *only* for a crime specified in this subsection (1) *for which a felony penalty is authorized upon conviction."*

§ 16–15–102(1)(b) (emphasis added). The question here is whether the wiretap order was issued in compliance with this subsection.

The application for a wiretap order was supported by a forty-four page affidavit. The affidavit named Guy McNulty, Dennis Valley, and six other individuals who were believed to be using a specified telephone

"for the commission of, and transmission of the following offenses in violation of the statutes of the State of Colorado, C.R.S.1973, 18–10–103(1) and (2), (Gambling, Professional Gambling), C.R.S. 1973, 18–10–105, (Possession of a gambling device or record), C.R.S.1973, 18–10–106, (Gambling information), C.R.S. 1973, 18–10–107, (Maintaining a gambling premises), C.R.S.1973, 18–2–201, (Criminal Conspiracy), together with violations of certain laws of the United States of America concerning unlawful gambling activity."

Rec., vol. I, at 114. The affidavit defined several gambling terms, *id.* at 118–20, identified the telephone to be tapped, *id.* at 121, gave background information on the eight people being investigated, *id.* at 122–34, related the backgrounds of and information provided by two anonymous informants, *id.* at 135–39, gave details concerning police investigations of McNulty, including a pen register of the telephone in question, *id.* at 135–52, and explained why investigative procedures other than electronic surveillance could not be used, *id.* at 153–55.

Three of the offenses listed in the affidavit (possession of a gambling device or record, gambling information, and gambling premises) are not in the wiretapping statute's enumeration of crimes. *Nowhere did the affidavit allege that the proposed wiretap was for the investigation of a felony.* Buried in this voluminous affidavit

is a summary of McNulty's and Valley's prior criminal records. On appeal and at trial the Government relied solely on McNulty's prior record to support the wiretap order. Therefore, I will address that matter first.

Item "(t)" of the summary shows that in December 1979, one year before the wiretap application, McNulty had pled guilty to professional gambling, *id.* at 123. The gambling statute provides: "A person who engages in professional gambling commits a class 1 misdemeanor. If he is a repeating gambling offender it is a class 5 felony." § 18–10–103(2). "Repeating gambling offender" is defined as "any person who is *convicted* of an offense under section 18–10–103(2) or sections 18–10–105 to 18–10–107 *within five years after a previous misdemeanor conviction* under these sections or a former statute prohibiting gambling activities, *or at any time after a previous felony conviction* under any of the mentioned sections." § 18–10–103(9) (emphasis added).

The government argues that McNulty's prior conviction for professional gambling made the professional gambling alleged in the affidavit "a crime ... for which a felony penalty is authorized upon conviction," as required by § 16–15–102(1)(b).[2] The government cites no Colorado cases construing the relevant provisions of the wiretapping and gambling statutes, and I have been able to find none.

It is apparent that the Colorado legislature intended to restrict electronic surveillance by law enforcement officers. First, wiretapping can only be used to investigate certain crimes. § 16–15–102(1)(a). Second, wiretapping is limited by the requirement that the crime be one "for which a felony penalty is authorized upon conviction." § 16–15–102(1)(b).[3] Holding this wiretap-

---

**2.** Defendants O'Brien and Tulper had not been convicted of professional gambling within the previous five years, so their conviction could only constitute a misdemeanor. Nevertheless, they were specifically listed in the affidavit as targets of the wiretap order. Defendants Staadts and Nestoff were not listed in the affidavit but were identified pursuant to the wiretap. ·

They also have not been previously convicted of professional gambling so as to make them subject to a felony penalty if convicted.

**3.** *See also* § 16–15–102(1)(a)(VI), (VII) (wiretap permitted for some enumerated crimes only "as [the] offenses are subject to prosecution as felonies"); § 16–15–102(16) (if authorized wiretap

ping order valid as to McNulty would frustrate the legislature's purpose of limiting wiretapping to the investigation of felonies. Section 16–15–102(1)(b) does not combine wiretapping to crimes for which a felony penalty *might be* authorized upon conviction, but to crimes for which a felony penalty *is* authorized upon conviction. The language is very strong ("[a]nything to the contrary notwithstanding"); it makes no mention of probable cause to believe the crime might be a felony, and leaves no room for conjecture. Thus, I disagree with the analysis of Judge Anderson in his footnote 4.

The Colorado wiretapping statute's limitations clearly are intended to serve the important interest of protecting privacy. *Cf. Gelbard v. United States*, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972) (protection of privacy "an overriding congressional concern" in enacting federal wiretapping statute). "The need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping. By its very nature eavesdropping involves an intrusion on privacy that is broad in scope." *Berger v. New York*, 388 U.S. 41, 56, 87 S.Ct. 1873, 1882, 18 L.Ed.2d 1040 (1967). Indeed, "[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Id.* at 63, 87 S.Ct. at 1885.

In accordance with these privacy concerns and the Colorado legislature's obvious intent, I would construe the statutes strictly. Reading the wiretapping statute together with the gambling statute, it is my view that an ex parte wiretapping order is permissible under Colorado law only when the proposed interception involves someone who has previously been convicted of professional gambling twice within five years, so that a felony *is* authorized upon conviction, whenever the conviction should occur.

Judge Anderson believes that the affidavit in this case does disclose one named target who had previously been convicted of a felony. His commendably careful reading of the affidavit unearthed "what the parties and the court below apparently overlooked: the affidavit accompanying the wiretap application *clearly* shows that defendant Dennis Valley had a prior *felony* professional gambling conviction, which therefore makes the crime under investigation by the wiretap *certainly* one 'for which a felony penalty is authorized upon conviction.'" Anderson, J., at 1247 (emphasis added). Were it "clear" and "certain," it would have been addressed by the district court and the parties, but it was not. Rather, Judge Anderson raises it sua sponte for the first time now. Indeed, defendant Valley asserts that he "had no prior gambling convictions that would subject him to repeating offender status," citing to the very passage in the affidavit that Judge Anderson suggests "clearly" establishes the contrary. Brief of Appellant Valley at 2.

I cannot assume, as does Judge Anderson with no support in the record, that the state court judge issued the wiretap order because he, too, "found" the one sentence in a forty-four page affidavit that might support the order. Below and on appeal the Government relied solely on McNulty's prior misdemeanor conviction to meet the felony requirement. It is not the function of this court to scour a lengthy affidavit for one sentence that might bring the wiretap within the statute when the Government *never* raised that ground. Section 16–15–102(1)(b), unlike the affidavit, *is* clear: the crime investigated *must* be one "for which a felony penalty is authorized upon conviction." That the parties and the court below "overlooked" Valley's prior conviction itself attests to the inadequacy of the affidavit as an assurance to the issuing state court judge that the wiretap will conform to the statute's mandate.

I would affirm.

---

yields evidence for offense not specified in order, evidence may be used only if offense is one which "constitutes a felony under Colorado statutes").

Before SETH, Chief Judge, and HOLLO-
WAY, BARRETT, DOYLE, McKAY, LO-
GAN and SEYMOUR, Circuit Judges.

On Rehearing En Banc

McKAY, Circuit Judge.

This case involves the admissability in a federal prosecution of evidence obtained pursuant to a state authorized and conducted wiretap. A divided panel of this court reversed the trial court order suppressing the evidence. We granted rehearing en banc to consider the important question of proper interpretation of the federal wiretap statute. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520 (1982).

In enacting the federal wiretap statute Congress' overriding concern was the protection of privacy. *Gelbard v. United States*, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972). Our mandate to strictly construe judicial wiretap authorizations is bottomed on the fact that "[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devises." *Berger v. New York*, 388 U.S. 41, 63, 87 S.Ct. 1873, 1885, 18 L.Ed.2d 1040 (1967). Congress has directed that any aggrieved person in a trial may move to suppress the contents of a wiretap on the grounds that "(i) the communication was unlawfully intercepted." 18 U.S.C. § 2518(10)(a) (1982). Congress' authorization for admissibility of wiretap evidence in a federal trial is contained in 18 U.S.C. § 2517(3) (1982). The authorization provides that "[a]ny person who has received, *by any means authorized by this chapter*, any information concerning a wire or oral communication, or evidence derived therefrom *intercepted in accordance with the provisions of this chapter* may disclose the contents of that communication or such derivative evidence while giving testimony under oath...." 18 U.S.C. § 2517(3) (emphasis added).

Authorization for receipt of state authorized and conducted wiretaps is contained in 18 U.S.C. § 2516(2) (1982). The pertinent portion of that statute reads:

The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and *such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute* an order authorizing, or approving the interception of wire or oral communications....

*Id.* (emphasis added). Thus, the statute permits receipt of state authorized wiretap evidence only if the state authorization complies both with the federal statute *and* with the applicable state statute.

The Second Circuit has correctly suggested that *federal law* prohibits introduction of evidence obtained by state agents proceeding under section 2516(2) where state wiretap order requirements are violated. *See, e.g., United States v. Marion*, 535 F.2d 697 (2d Cir.1976). There the court said:

Here, of course, the two conversations in issue were used in federal proceedings. Thus, despite the fact that the interceptions were made pursuant to a state court authorization, at the very least the other requirements of Title III—including § 2517(5)—must be satisfied. But whether the proceedings be federal or state, interpretation of a state wiretap statute can never be controlling where it might impose requirements less stringent than the controlling standard of Title III. *If a state should set forth procedures more exacting than those of the federal statute, however, the validity of the interceptions and the orders of authorization by which they were made would have to comply with that test as well.*

*Id.* at 702 (footnotes omitted) (emphasis added). *See also United States v. Hinton*, 543 F.2d 1002, 1010–12 (2d Cir.1976), *cert.*

*denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 767 (1977), 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 783 (1977), 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977); *United States v. Manfredi,* 488 F.2d 588, 597–602 & 598 n. 7 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974).

Even though federal agents acting under a federal order may have lawfully obtained the evidence at issue, the statute requires more of state officers following statutory procedures—they must also comply with state standards.[1] Cases implying a contrary conclusion are distinguishable. None of them involves a situation where the state judge issued an order for a wiretap in violation of the state statute. Primarily the cases fall into two categories. The first involves those where some state procedure was violated *subsequent* to interception, such as requirements for sealing the tapes of the intercepted conversations within a certain time frame. *See United States v. Vazquez,* 605 F.2d 1269, 1274–80 (2d Cir.1979), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *United States v. Sotomayor,* 592 F.2d 1219, 1222–27 (2d Cir.), *cert. denied,* 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979). *Sotomayor* clearly sets forth the distinction between the *interception* of information under a state court order, as opposed to state law governing the post-interception *preservation* or use of the information.

> We believe that at most *Manfredi* requires us, in determining whether to admit a wiretap obtained by a state officer acting under a state court order issued pursuant to a state statute, to *apply only those more stringent state statutory requirements or standards that are designed to protect an individual's right of privacy, as distinguished from procedural rules that are essentially evidentiary in character.*

This distinction between procedures governing *the interception* of wiretap evidence and those governing *the preservation* of such evidence after interception for trial is important. *Since a state's protection of privacy normally reflects principles central to its social and governmental order, our failure to respect its more stringent protection of privacy rights would not only violate principles of federalism, but encourage state and federal law enforcement officials to by-pass state law and to engage in federal forum-shopping of tainted evidence.* On the other hand, rules pertaining to the admissibility of evidence are ordinarily governed by the law of the forum.

> Applying these principles here, it is readily apparent that New York's sealing requirements, although vital to the state statutory scheme, do not impose a standard designed to protect an individual's right of privacy but seek only to assure that, *once a lawful interception has been completed,* the fruits of the seizure will remain intact. *United States v. Lawson,* 545 F.2d 557, 564 (7th Cir.1975). The sealing requirement is a post-interception procedure relating solely to the later preservation of the evidence, *as contrasted to the methods used to obtain it. Since the latter involved the state's interest in protection of privacy, the state's law on the subject was respected in Manfredi, Rizzo and Marion.* However, whatever interest, if any, the state may have in securing federal enforcement of its sealing requirements through application of the exclusionary rule is outweighed by the federal interest in establishing its own standards for the admission of *lawfully obtained wiretaps* into evidence.

*Id.* at 1225–26 (footnotes omitted) (emphasis added). Both *Vazquez* and *Sotomayor* recognize that where the issue involves the validity of a state ordered wiretap, the

---

**1.** The government never contended that the Colorado statute does not apply. See Appellant's brief at 13.

more stringent state requirements must be respected by federal courts. We agree with this conclusion and with the analysis quoted above from *Sotomayor.*

 The other category of distinguishable cases involves *warrantless* wiretaps conducted *with* one participant's *consent.* *See, e.g., United States v. Horton,* 601 F.2d 319 (7th Cir.), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); *United States v. Nelligan,* 573 F.2d 251 (5th Cir.1978); *United States v. Shaffer,* 520 F.2d 1369 (3d Cir.1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 67 (1976); *United States v. Neville,* 516 F.2d 1302, 1309 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975). Section 2511(2)(c) specifically provides that it is not unlawful for a person acting under color of law to conduct a wiretap "where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c) (1976). A communication is not unlawfully intercepted within the meaning of section 2518(10)(a)(i) where one of the parties to the conversation is acting under color of law or has given prior consent to the interception. We have so held in *United States v. Hall,* 536 F.2d 313, 327 (10th Cir.), *cert. denied,* 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976). The federal statute specifically permits introduction of consensual recordings and thus controls over conflicting state eavesdropping regulations. Where one party consented and no state court order or warrant was obtained, as in the cited cases, the requirement of 18 U.S.C. § 2516(2) that the applicable state law must be complied with, does not come into play.

There is one other case that does not fit either of these two categories. In *United States v. Hall,* 543 F.2d 1229 (9th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977), a properly authorized *federal* wiretap produced information about transportation of heroin. State officials were notified and they made a warrantless search of the defendant and seized the heroin. The Ninth Circuit refused to

apply the California provision forbidding the use of the fruits of wiretap information by state police. In that case, however, the issue was solely one of admissibility of evidence obtained *subsequent to a validly authorized wiretap.* The court there recognized that state standards would have been applicable had the evidence been obtained by state officers for state prosecution in violation of a state statute:

> The state law cannot preempt the federal unless the federal act itself sanctions the application of state standards. That is not the case here. Federal officers are authorized to wiretap under § 2516(1), regardless of the provisions of state law; *it is only wiretapping by state officers under § 2516(2) which requires further authorization by state statute.* Section 2515 requires the exclusion of wiretap evidence from any court proceeding if its disclosure would violate the federal act; no mention is made of any state law. The legislative intent that federal law is to prevail in case of conflict is further indicated by § 2520, which provides:
>
> > "A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter *or under any other law* [emphasis added.]"
>
> *With the lone exception concerning interception by state officers for state prosecutions, the federal statute does not defer to the states.*

*Id.* at 1232 (emphasis added).

 In sum, we are persuaded that the federal statute itself requires our deference to Colorado law on the question of the validity of the wiretap order obtained in state court under state law.

In order to determine whether the evidence here at issue was lawfully obtained, we must carefully read both the Colorado wiretapping statute, Colo.Rev.Stat. § 16–15–102 (1978), and the Colorado gambling statute, Colo.Rev.Stat. §§ 18–10–101 to –108 (1978). The wiretapping statute authorizes a state judge to enter an ex parte

order authorizing wiretapping only if the judge determines that "[t]here is probable cause for belief that a person is committing, has committed, or is about to commit a particular offense enumerated in this section." § 16–15–102(4)(a). One of the enumerated crimes is "[g]ambling, meaning professional gambling, as defined in section 18–10–102(3) [sic; should be –102(8) ], C.R.S.1973, and subject to prosecution under section 18–10–103(2), C.R.S.1973." § 16–15–102(1)(a)(III). *"Anything to the contrary notwithstanding,* an ex parte order for wiretapping ... may be issued *only* for a crime specified in this subsection (1) *for which a felony penalty is authorized upon conviction."* § 16–15–102(1)(b) (emphasis added). The question here is whether the wiretap order was issued in compliance with this subsection.

The application for a wiretap order was supported by a forty-four page affidavit. The affidavit named Guy McNulty, Dennis Valley, and six other individuals who were believed to be using a specified telephone

> for the commission of, and transmission of the following offenses in violation of the statutes of the State of Colorado, C.R.S.1973, 18–10–103(1) and (2), (Gambling, Professional Gambling), C.R.S. 1973, 18–10–105, (Possession of a gambling device or record), C.R.S.1973, 18–10–106, (Gambling information), C.R.S. 1973, 18–10–107, (Maintaining a gambling premises), C.R.S.1973, 18–2–201, (Criminal Conspiracy), together with violations of certain laws of the United States of America concerning unlawful gambling activity.

Record, vol. 1, at 114. The affidavit defined several gambling terms, *id.* at 118–20, identified the telephone to be tapped, *id.* at 121, gave background information on the eight people being investigated, *id.* at 122–34, related the backgrounds of and information provided by two anonymous in-

formants, *id.* at 135–39, gave details concerning police investigations of McNulty, including a pen register of the telephone in question, *id.* at 135–52, and explained why investigative procedures other than electronic surveillance could not be used, *id.* at 153–55.

Three of the offenses listed in the affidavit (possession of a gambling device or record, gambling information, and gambling premises) are not in the Colorado wiretapping statute's enumeration of crimes. *Nowhere did the affidavit allege that the proposed wiretap was for the investigation of a felony.* Buried in this voluminous affidavit is a summary of McNulty's and Valley's prior criminal records. On appeal and at trial the government relied solely on McNulty's prior record to support the wiretap order.

Item "(t)" of the summary shows that in December 1979, one year before the wiretap application, McNulty had pled guilty to professional gambling, *id.* at 123. The gambling statute provides: "A person who engages in professional gambling commits a class 1 misdemeanor. If he is a repeating gambling offender it is a class 5 felony." § 18–10–103(2). "Repeating gambling offender" is defined as "any person who is *convicted* of an offense under section 18–10–103(2) or sections 18–10–105 to 18–10–107 *within five years after a previous misdemeanor conviction* under these sections or a former statute prohibiting gambling activities, *or at any time after a previous felony conviction* under any of the mentioned sections." § 18–10–103(9) (emphasis added).

The government argues that McNulty's prior conviction for professional gambling made the professional gambling alleged in the affidavit "a crime ... for which a felony penalty is authorized upon conviction," as required by § 16–15–102(1)(b).[2] The government cites no Colorado cases con-

---

**2.** Defendants O'Brien and Tulper had not been convicted of professional gambling within the previous five years, so their conviction could only constitute a misdemeanor. Nevertheless, they were specifically listed in the affidavit as targets of the wiretap order. Defendants

Staadts and Nestoff were not listed in the affidavit but were identified pursuant to the wiretap. They also have not been previously convicted of professional gambling so as to make them subject to a felony penalty if convicted.

struing the relevant provisions of the wiretapping and gambling statutes, and we have been able to find none.

It is apparent that the Colorado legislature intended to restrict electronic surveillance by law enforcement officers. First, wiretapping can only be used to investigate certain crimes. § 16–15–102(1)(a). Second, wiretapping is limited by the requirement that the crime be one "for which a felony penalty is authorized upon conviction." § 16–15–102(1)(b).[3] Holding this wiretapping order valid as to McNulty would frustrate the legislature's purpose of limiting wiretapping to the investigation of felonies. Section 16–15–102(1)(b) does not confine wiretapping to crimes for which a felony penalty *might be* authorized upon conviction, but to crimes for which a felony penalty *is* authorized upon conviction. The language is very strong ("[a]nything to the contrary notwithstanding"); it makes no mention of probable cause to believe the crime might be a felony, and leaves no room for conjecture. This bright line interpretation is consistent with our mandate to narrowly construe the extraordinary remedy of wiretap authorizations which are as likely to intercept lawful and unlawful communications, as well as communications of innocent persons other than the target.

The Colorado wiretapping statute's limitations clearly are intended to serve the important interest of protecting privacy. *Cf. Gelbard v. United States*, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972) (protection of privacy "an overriding congressional concern" in enacting federal wiretapping statute). "The need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping. By its very nature eavesdropping involves an intrusion on privacy that is broad in scope." *Berger v. New York*, 388 U.S. 41, 56, 87 S.Ct. 1873, 1882, 18 L.Ed.2d 1040 (1967). Indeed, "[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Id.* at 63, 87 S.Ct. at 1885.

In accordance with these privacy concerns and the Colorado legislature's obvious intent, we construe the statutes strictly. Reading the wiretapping statute together with the gambling statute, we conclude that an ex parte wiretapping order is permissible under Colorado law only when the proposed interception involves someone who has previously been convicted of professional gambling twice within five years, so that a felony *is* authorized upon conviction, whenever the conviction should occur.

One of the panel opinions suggest that the affidavit in this case does disclose one named target who had previously been convicted of a felony. His careful reading of the affidavit unearthed "what the parties and the court below apparently overlooked: the affidavit accompanying the wiretap application clearly shows that defendant Dennis Valley had a prior felony professional gambling conviction, which therefore makes the crime under investigation by the wiretap certainly one 'for which a felony penalty is authorized upon conviction.' " Anderson, J., slip op. at 3.[4] The government did not rely on this sentence at the district court level nor otherwise call the matter to the attention of the trial court. The district court conducted a contested hearing specifically on the issue of whether the affidavit established a basis for finding probable cause. That was the proper time to present any ground for judgment if one existed. Not only did the government not supply the trial court with an opportunity to rest its judgment on this fact while the matter was at issue, but it likewise failed to supply this court with

---

**3.** *See also* § 16–15–102(1)(a)(VI), (VII) (wiretap permitted for some enumerated crimes only "as [the] offenses are subject to prosecution as felonies"); § 16–15–102(16) (if authorized wiretap yields evidence for offense not specified in order, evidence may be used only if offense is one which "constitutes a felony under Colorado statutes").

**4.** Honorable Aldon J. Anderson, Chief Judge, District of Utah, sitting by designation.

argument based on this evidence when the appeal was first argued. Where no objection is made at trial to the admission of evidence or where a party fails to present relevant evidence, a court of appeals will not review the trial court's ruling absent plain error. *See, e.g., United States v. Brown*, 540 F.2d 1048 (10th Cir.1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977). *See also United States v. Rowe*, 565 F.2d 635 (10th Cir. 1977) (failure to give limiting instruction not plain error where instruction not requested). Further, absent exceptional circumstances or manifest injustice, an issue not raised in the trial court will not be considered on appeal. *United States v. Oakes*, 564 F.2d 384 (10th Cir.1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978).

We do not believe that this case is one which merits the application of the plain error or manifest injustice rule.

AFFIRMED.

LOGAN, Circuit Judge, with whom BARRETT and WILLIAM E. DOYLE, Circuit Judges, join, dissenting.

I agree with the majority opinion that when a wiretap order is obtained in state court, and the state standards are more strict than the federal, the supporting affidavit must meet the standards of both laws for the information obtained by the wiretap to be admissible in a federal prosecution. I disagree with the majority decision, however, because it does not interpret the Colorado statute in a "practical and common sense fashion." *See United States v. Armocida*, 515 F.2d 29, 37 (3d Cir.), *cert. denied sub nom. Conti v. United States*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975) (federal wiretap law). Also, the majority gives no credit to the state trial judge for knowing the requirements of the state statute and reading the application for wiretap authorization in light of the state requirements.

Colorado permits a wiretap order for investigation of certain enumerated crimes "for which a felony penalty is authorized upon conviction." Colo.Rev.Stat. § 16-15-102(1)(b). Professional gambling subject to prosecution under § 18-10-103(2) is among the enumerated offenses. *Id.* § 16-15-102(1)(a)(III). Section 18-10-103(2) says, "A person who engages in professional gambling commits a class 1 misdemeanor. If he is a repeating gambling offender it is a class 5 felony." Thus, a professional gambling offense may be a felony if the person is a "repeating" gambling offender. A repeating gambling offender is "any person who is convicted of an offense under section 18-10-103(2) or sections 18-10-105 to 18-10-107 within five years after a previous misdemeanor conviction under these sections or a former statute prohibiting gambling activities, or at any time after a previous felony conviction under any of the mentioned sections." *Id.* § 18-10-102(9).

Federal courts must apply a strong presumption of correctness to state court fact determinations. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). This deference extends to cases in which the state court did not make an express finding, but implicitly resolved the issue. *Marshall v. Lonberger*, 459 U.S. 422, 430-435, 103 S.Ct. 843, 849-51, 74 L.Ed.2d 646, 656-58 (1983). We must presume that the state judge who issued the wiretap order was familiar with the relevant Colorado statutes. Thus, when he saw the application seeking a wiretap order to secure evidence of gambling offenses, including violations of "§ 18-10-103, (1) and (2), as amended" [R.I, 00112], presumably he searched the supporting affidavit for indications that a "felony penalty is authorized upon conviction" of at least one of the parties being investigated. *See United States v. Tortorello*, 480 F.2d 764, 775 (2d Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973) ("If probable cause has been shown as to one such participant, the statement of other participants may be intercepted if pertinent to the investigation."). Guy McNulty and Dennis Valley were the first subjects of the investigation mentioned in the application. The criminal record of Dennis Valley set out in the sup-

porting affidavit shows a felony conviction for gambling in a Colorado state court. [R.I, 00126]. It was therefore certain that if the investigation turned up evidence supporting an indictment of Valley, a felony charge would be authorized. Thus, as Judge Aldon Anderson correctly pointed out in his panel opinion, the state trial judge acted properly in issuing the wiretap order.

In seeking to admit in the federal prosecution evidence secured pursuant to the state wiretap order the federal prosecutors did not bring Valley's record to the district court's attention. Instead, they relied exclusively upon the portion of the affidavit stating that defendant McNulty had entered a guilty plea to a gambling charge on December 13, 1979. Assuming that the majority therefore correctly ignores Valley's record, I would still reverse. The state wiretap order was issued on November 21, 1980. [R.I, 00163]. Thus, McNulty's conviction was less than one year before the issuance of the wiretap order. When investigation and prosecution are likely to be completed within five years of the previous conviction, common sense demands that the investigation of McNulty be considered an investigation of a crime "for which a felony penalty is authorized upon conviction." Colo.Rev.Stat. § 16–15–102(1)(b). State authorities should not be required to specifically inform the state trial judge that they intend to complete the investigation, charge a felony, and obtain a felony conviction within five years of the previous conviction. No prosecutor can ever guarantee that an investigation will result in a felony charge within the applicable statute of limitations. We should not speculate whether it is possible for something to delay the prosecution in a case like this beyond the five-year period, at least when prosecutors have more than four years to act.

I would reverse the suppression order entered by the trial court in this case.